**LouAnn COLEMAN, Petitioner,**

v.

**WORKERS' COMPENSATION AP-PEAL BOARD (INDIANA HOSPITAL AND PHICO SERVICES COMPANY), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 2, 2002.
Decided Oct. 7, 2002.
Reargument En Banc Denied
Dec. 4, 2002.

Vincent J. Quatrini, Jr., Greensburg, for petitioner.

Stephen L. Dugas, Hollidaysburg, for respondent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

LouAnn Coleman (Claimant) petitions for review of the January 25, 2002 order of the Workers' Compensation Appeal Board (Board) that dismissed as moot Claimant's appeal from an order of the Workers' Compensation Judge (WCJ) granting a petition to compel a physical examination on behalf of Indiana Hospital (Employer), which directed Claimant to submit to diagnostic imaging testing. We reverse the

Board's order and affirm the WCJ's order on the merits.[1]

In 1995, Claimant, while working as a licensed practical nurse for Employer sustained a compensable injury to her right shoulder. On March 1, 2000, at the request of Employer, Claimant underwent an independent medical examination (IME) by Dr. Fred K. Khalouf. On April 10, 2000, Employer filed a petition for physical examination alleging that on March 30, 2000, it requested that Claimant submit to a physical examination by Dr. Khalouf, who ordered a "non-invasive triphasic bone scan and shoulder MRI, which [C]laimant refused to attend." Employer's Petition; R.R. 9a.

On April 13, 2000, Claimant filed an answer wherein she stated: "Claimant will attend the bone scan and shoulder MRI ordered by Dr. Khalouf upon the order of the Workers' Compensation Judge." Claimant's Answer; R.R. 12a.

Before the WCJ, Claimant submitted a June 13, 2000 medical report from Dr. Robert P. Durning, wherein he stated:

[P]lease note that in my opinion, "physical examination" refers to the detection of physical injury or disease by trained use of the senses to personally look, listen, touch, etc. Use of sense-extenders such as blood pressure cuffs, stethoscopes, ophthalmoscopes, tongue blades, reflex hammers, and so on are part of a physical examination.

In my opinion, imaging studies such as X-ray, ultrasound, CT scan, MRI, and radioisotope scanning are separate and distinct from a physical examination.

Those diagnostic or laboratory tests are not part of the physical examination.

Durning Report; R.R. 14a.

Employer introduced into evidence the March 1, 2000 report of Dr. Khalouf, wherein he stated:

To fully complete my evaluation I do feel that two diagnostic studies would be most helpful. A triphasic bone scan correlating it to the December 1996 study and an MRI of the right shoulder, knowing that she has had two operative procedures since, would be helpful. If these do not correlate with an objective lesion then I would have to conclude that she has indeed fully recovered from the work injury and is exhibiting a malingering pattern as to the ongoing nature of her complaint. Fresh total shoulder replacements and complete rotator cuff tears do not have this degree of functional limitation. I will follow up on all of this with an addendum after the studies have been performed.

Khalouf Report at 3; R.R. 4a.

On September 27, 2000, the WCJ circulated a decision and order granting Employer's petition for physical examination and directing Claimant to submit to the diagnostic testing recommended by Dr. Khalouf. Claimant complied with the order and underwent the triphasic bone scan and right shoulder MRI.

■ Nevertheless, Claimant appealed the WCJ's order to the Board. In her appeal, Claimant alleged that although Employer is entitled to a physical examination pursuant to Section 314 of the

---

1. Although the Board dismissed Claimant's appeal as moot, the WCJ fully addressed the issue raised by Claimant and a full and complete record of the proceedings has been made. As we noted in *Moonblatt v. Workmen's Compensation Appeal Board (City of* *Philadelphia)*, 85 Pa.Cmwlth.128, 481 A.2d 374 (1984), our appellate scope of review is essentially the same as that of the Board. Therefore, in the interest of judicial economy, this Court will address the merits of Claimant's appeal from the WCJ's decision.

Workers' Compensation Act (Act),[2] it is not entitled to require Claimant to undergo diagnostic testing under that provision. On January 25, 2002, the Board issued a decision and order dismissing Claimant's appeal as moot because Claimant had undergone the required testing. Claimant's appeal to this Court followed.[3]

■ Claimant's first argument is that the issue of whether a claimant must submit to diagnostic testing such as a bone scan and an MRI as part of the "physical examination" requirement of Section 314 of the Act should not have been dismissed by the Board as moot. Claimant contends that this issue falls within an exception to the mootness doctrine because it is capable of repetition and likely to evade judicial review insomuch as a claimant must submit to such testing in order to retain his or her benefits.

In support, Claimant cites *Walker v. Workers' Compensation Appeal Board (Temple Univ. Hosp.)*, 792 A.2d 628 (Pa. Cmwlth.2002), where this Court determined that although the claimant had attended the vocational interview as required, his appeal should not be dismissed as moot "inasmuch as the issue is capable of repetition but is likely to evade judicial review, and [the claimant] had no choice but to attend the interview to retain his benefits." *Id.* at 630 n. 2.

We believe that the rationale in *Walker* is also applicable in the present case, where Claimant was compelled to follow the WCJ's order in order to retain her benefits. As a result, we will address the merits of Claimant's appeal.

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 651.

**3.** On review, this Court is limited to a determination of whether the necessary findings of fact are supported by substantial evidence,

Section 314 of the Act provides in pertinent part:

(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a *physical examination* ... by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination ... by the health care provider or other expert selected by the employer, a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination ... at a time and place set by the workers' compensation judge.... The workers' compensation judge may at any time after such first examination ... upon petition of the employer, order the employe to submit himself to such further *physical examinations* ... as the workers' compensation judge shall deem reasonable and necessary....

77 P.S. § 651(a) (emphasis added).

Claimant contends that the 1996 amendments to Section 314, which added the word *physical* to the word *examination* made it clear that the legislature intended that a physical examination under Section 314 requires that a health care provider *lay hands* upon a claimant and come to a medical conclusion from this procedure. Claimant further contends that as a result, Section 314 may not be used to compel a claimant to undergo diagnostic testing in some hospital or clinic, which cannot be considered a *physical examination* by a health care provider.

whether errors of law have been committed or whether constitutional rights have been violated. *City of Philadelphia v. Workers' Compensation Appeal Board (Siravo)*, 789 A.2d 410 (Pa.Cmwlth.2001).

Additionally, Claimant asserts that the only evidence before the WCJ on this issue was the opinion of Dr. Durning, that imaging studies such as x-rays, ultrasound, CT scan, MRI and radioisotope scanning are separate and distinct from a physical examination and, therefore, cannot be considered part of a physical examination.

In response, Employer contends that the issue of what constitutes a *physical examination* under Section 314 is a legal question and that the WCJ is not bound by the opinion of Dr. Durning. Employer further contends that to limit the term *physical examination* in Section 314 to a physician's physical touch is too restrictive a construction of that term because it would prevent physicians from reviewing diagnostic testing results obtained from sources that went beyond mere physical touch.

█ This Court agrees. As medical science has progressed, diagnostic testing has become a standard tool of the medical profession and has proven to be valuable in the detection of physical injury or disease. As the WCJ noted, this Court has recognized that "[t]he Act treats a physician's examination as a method of fact-finding to determine the extent of a claimant's disability for purposes of determining the right to benefits." *Maranc v. Workmen's Compensation Appeal Board (Bienenfeld),* 156 Pa.Cmwlth.572, 628 A.2d 522, 524 (1993); *see also Wolfe v. Workmen's Compensation Appeal Board (Edgewater Steel Co.),* 161 Pa.Cmwlth.361, 636 A.2d 1293, 1296 (1994) ("physician's examination is a source of information regarding the employee's disability for the [WCJ] to consider when the [WCJ] makes findings of fact.") Diagnostic testing such as x-rays, MRIs and CT scans have unquestionably aided health care providers in their ability to determine the extent of a claimant's injuries in cases where a mere physical touch would not yield such information. Hence, we conclude that non-invasive diagnostic testing such as an MRI or bone scan falls within the meaning of the term *physical examination* for purposes of Section 314 of the Act.

█ Furthermore, Section 314 permits the WCJ, after a first examination, to order a claimant to submit to such further physical examinations as the WCJ deems reasonable and necessary. After examining Claimant on March 1, 2000, Dr. Khalouf stated in his report that a triphasic bone scan and right shoulder MRI would be "most helpful" in that they would indicate an objective basis for Claimant's symptoms where said symptoms were "out of proportion to the objective findings" and "symptom fabrication" was strongly suspected. Khalouf Report at 3; R.R. 4a. Consequently, we do not believe that the WCJ either erred or abused his discretion by directing that Claimant submit to a triphasic bone scan and right shoulder MRI as part of Dr. Khalouf's physical examination. Accordingly, we conclude that the WCJ did not err in granting Employer's petition.

## *ORDER*

AND NOW, this 7th day of October, 2002, based on the reasons in the foregoing opinion, the January 25, 2002 order of the Workers' Compensation Appeal Board dismissing Petitioner's appeal as moot is REVERSED and the September 27, 2000 order of the Workers' Compensation Judge is AFFIRMED.