**James WALLACE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BETHLEHEM STEEL/PA STEEL TECH.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 2004.

Decided May 11, 2004.

Publication Ordered July 15, 2004.

Deborah L. Packer, Harrisburg, for petitioner.

Mark J. Powell, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge McGINLEY.

James Wallace (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) who granted Claimant benefits for an August 3, 1998, back injury.

On March 1, 2001, Bethlehem Steel/Pennsylvania Steel Technologies (Employer) submitted to the WCJ for approval a LIBC–755 (Form LIBC–755) Compromise and Release Agreement (C & R) and supporting documentation which released Employer from all claims for benefits that arose out of a work-related inhalation injury. The C & R described the injury as one that occurred when Claimant inhaled certain chemicals while cleaning metal plates. The C & R stated that Claimant sustained no other injuries or diseases arising out of, or causally related to his employment, and recited that Claimant gave no statutory notice of any other injuries.

Paragraph 4 of the C & R provided as follows:

> Claimants' allegation of injury is that he inhaled trichloroethylene and perchloroethylene in an unventilated area while cleaning metal plates. Claimant also alleges that he inhaled Chlorosolv in October 1996 and on March 24, 1997. By agreeing to this Compromise and Release Agreement, Claimant specifically represents that he has sustained no other occupational injuries or diseases arising out of or causally related to his employment with Bethlehem Steel; and that he has not given statutory notice of any other injuries or diseases.

C & R, ¶4 at 1; Reproduced Record (R.R.) at 142a.

In Paragraph 9 of the C & R, Employer agreed to pay a Blue Cross subrogation lien, prescription costs, past medical bills Claimant incurred in connection with his treatment for his respiratory ailments, costs of the transcript of the first hearing in the inhalation case, and future medical bills related to Claimant's treatment for injuries sustained as the result of the chemical exposure of May 22, 1996. Under the C & R, Claimant did not receive any lump sum or wage loss benefits; only

the payment of medical bills. The date of the inhalation injury and dates of treatment were specific. In the C & R, regarding the back injury, there is no date of injury, no description of a back injury, no dates of disability, no average weekly wage or compensation rate, no dates of treatment to providers or types of treatment. Claimant agreed to release Employer and its insurer from liability "on account of the injury which is the subject of [the C & R] Agreement." C & R at 6; R.R. at 147a.

A hearing was held on March 13, 2001, before the WCJ (hereinafter "first WCJ") in accordance with Section 449(b) of the Act.[1] Claimant's counsel went through the items which Employer agreed to pay, all of which related to injuries sustained as the result of the chemical exposure of May 22, 1996. Claimant testified that he understood that those items were being paid by Employer in exchange for discontinuing "his claim." Notes of Testimony, March 13, 2001, (N.T. 3/13/01) at 4–6; R.R. at 152a–154a.

The first WCJ found that Claimant understood the legal significance of entering into the C & R and orally approved the Agreement. N.T. 3/13/01 at 10; R.R. at 158a. The first WCJ issued a decision and

Order approving and adopting the C & R, which was circulated on March 20, 2001.

On July 24, 2001, Claimant petitioned for benefits and alleged that on August 3, 1998, he sustained a work-related injury to his lower back while lifting fifty-pound rolls of metal banding as part of his job as a car bracer. Claim Petition, 7/24/01 at 1; R.R. at 1a. Employer denied all allegations, and asserted that Claimant was precluded from pursuing benefits for the back injury based on his representation in the C & R that he suffered no work-related injury, other than the respiratory injury. Employer's Answer to Claim Petition at 1; R.R. at 6a; Notes of Testimony, December 17, 2001 (N.T. 12/17/01) at 3; Supplemental Reproduced Record (S.R.R.) at 3b.[2]

Hearings were held before a second WCJ (hereinafter "second WCJ") on December 17, 2001, February 4, 2002, and April 29, 2002. Claimant testified that on August 3, 1998, while he loaded rolls of band onto the cutting machine, he felt excruciating pain in his back that went down his leg. N.T. 12/17/01 at 9; S.R.R. at 9b. Claimant testified that he dropped the roll and went to see his supervisor, Dick Leeser (Leeser). Claimant filled out an injury slip and was sent to the dispensary.[3] N.T. 12/17/01 at 10; S.R.R. at 10b.

---

1. Act of June 2, 1915, P.L. 736, Section 449(b) was added by Act of June 24, 1996, P.L. 350, as amended, 77 P.S. § 1000.5. Section 449(b) provides, in pertinent part, as follows: "Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the [WCJ] for approval. The [WCJ] shall consider the petition and the proposed agreement in open hearing and shall render a decision. . . ."

2. Claimant then filed a Petition to Set Aside Final Receipt on January 11, 2002, and requested the C & R be set aside because it was not properly witnessed, was materially incorrect, was not in the best interest of Claimant, and because Claimant did not understand the

full legal significance of the agreement. Petition to Set Aside, 1/11/02 at 1; R.R. at 3a.

3. Claimant saw the plant nurse who gave him ice packs and ibuprofen. N.T. 12/17/01 at 11; S.R.R. at 11b. The next day, Claimant reported to the dispensary and was seen by the company doctor, David Froehlich, M.D. (Dr. Froehlich) who prescribed heat treatment and medication. N.T. 12/17/01 at 12; S.R.R. at 12b. Dr. Froehlich gave Claimant an excuse slip with restrictions for lifting, bending, and stooping. Claimant gave the excuse slip to Leeser who told Claimant to go to the break room. N.T. 12/17/01 at 13–14; S.R.R. at 13b–14b.

Claimant called in sick for a week and a half. He left messages on the answering machine about his back problems. N.T. 12/17/01 at 15; S.R.R. at 15b. Claimant saw William Pompella, M.D. (Dr. Pompella) at Cummings Associates, who prescribed pain medication and ordered an MRI and X-rays. The MRI showed a herniated disc in Claimant's lower back. Dr. Pompella gave Claimant an excuse which stated Claimant could not work until further evaluation. Claimant gave the MRI report and excuse slip to his Employer. N.T. 12/17/01 at 16–18; S.R.R. at 16b–18b.

Dr. Pompella referred Claimant to Ronald Lippe, M.D. (Dr. Lippe) at the Orthopedic Institute. Dr. Lippe prescribed Diclofenac, and wrote a note for Claimant to give to his Employer which stated that he could not return to work. N.T. 12/17/01 at 20; S.R.R. at 20b. Claimant sent Employer copies of the excuses he received from his doctors. N.T. 12/17/01 at 21; S.R.R. at 21b.

Claimant testified that he received letters from Employer on August 26, 1998, September 9, and September 15, 1998, which contained threats to terminate him for failing to return to work and instructed him to report to his Union to file a grievance. Notes of Testimony, April 29, 2002 (N.T. 4/29/02) at 62–63; R.R. at 131a–132a; N.T. 12/17/01 at 21; S.R.R. at 21b. Claimant eventually retired on September 30, 1998, because of his back problems, his continuing symptoms related to the chemical inhalation, and because he was devastated by Employer's threats to terminate him after 18½ years of service. N.T. 12/17/01 at 22; S.R.R. at 22b.[4]

Also, Claimant testified that Paragraph 4 of the C & R was incorrect because he did in fact sustain a work related back injury on August 3, 1998, and he did give statutory notice to his employer on the date the injury occurred. Notes of Testimony, February 4, 2002, (N.T. 2/4/02) at 7–8; R.R. at 18a–19a. Claimant believed the C & R did not affect his back injury claim based on what his attorney told him. N.T. 2/4/02 at 8; R.R. at 19a.

The second WCJ granted benefits based on his determination that Claimant suffered a back injury in the course of his employment. However, the second WCJ suspended benefits based on his conclusion that Claimant voluntarily took himself out of the workforce, and suitable work was available to Claimant. The second WCJ further ordered Employer to pay medical bills for treatment for Claimant's back through January 23, 2002, based on the testimony of Dr. Dahmus, who testified Claimant had recovered by that date.

The second WCJ made the following conclusions:

1. Claimant established that he suffered an injury in the course of his employment which resulted in disability.

---

**4.** Claimant also presented the deposition testimony of his chiropractor, Albert J. Skocik who testified to a reasonable degree of medical certainty that Claimant sustained a herniated disc which was related to his work injury of August 1998, and that Claimant could not currently perform his pre-injury job duties. Deposition of Albert J. Skocik, February 2, 2002 at 5–6, 11, 25.

Employer presented the testimony of Claimant's superintendent, George Downey who testified that there was light duty work available to Claimant, namely roller line operating jobs. N.T. 4/29/02 at 25; R.R. at 94a. Employer also presented the deposition testimony of Robert R. Dahmus, M.D., (Dr. Dahmus) a board-certified orthopedic surgeon who testified that Claimant suffered a back strain or sprain and some nerve irritation in August 1998, but recovered completely as of January 23, 2002. Deposition of Robert R. Dahmus, M.D., June 5, 2002, at 4.

2. Defendant established that claimant voluntarily took himself out of the work force.

3. Defendant established that there was work available to claimant and that accommodations would be made and claimant was aware of this.

4. Defendant established that claimant had recovered as of January 23, 2002.

. . . .

7. Claimant established that he needed additional medical treatment up unto the date of termination and that the treatment was due to the work injury.

8. The Compromise and Release Agreement did not deal with his back injury but rather dealt with a work injury concerning an inhalation problem.

WCJ's Decision, January 28, 2003, Conclusions of Law Nos. 1–4 and 7–8 at 11–12; R.R. at 234a–235a.

Both Claimant and Employer appealed. Claimant appealed the second WCJ's determination that he voluntarily retired, and suitable light duty work was available. Employer argued that Claimant was estopped by the first WCJ's March 13, 2001, order that approved the C & R.

The Board agreed with Employer and reversed the second WCJ based on its application of the doctrine of judicial estoppel. The Board stated:

> In *Dep't of Public Welfare v. WCAB (Overton)*, 783 A.2d 358 (Pa.Cmwlth. 2001), the Court applied the doctrine of judicial estoppel in a workers' compensation case. In Overton, the Court refused to allow the employer to disavow a stipulation previously submitted to and approved by a WCJ. The Court recently followed Overton in *Dep't of Corrections v. WCAB (Clark)*, 824 A.2d 1241 (Pa. Cmwlth.2003), holding that the employer may not later question the WCJ's jurisdiction to enforce a term agreed to in an approved C & R Agreement. **By the same token, we believe that Claimant, having represented that he had no other work injuries in the course of obtaining approval and the benefits of a C & R Agreement, may not turn around and file a Claim petition for an alleged injury occurring approximately two-and-a-half years earlier. The WCJ should have dismissed that Claim Petition in light of the approved C & R Agreement stipulating to no other work-related injury.**

Board's Opinion November 6, 2003, at 5–6; R.R. at 245a–246a. (emphasis added).

On appeal,[5] Claimant initially contends that the second WCJ properly concluded the C & R compromised the inhalation injury only, and did not operate to extinguish Employer's liability for his back injury. Specifically, Claimant contends that the C & R did not meet the requirements of Section 449 of the Act because none of the required information regarding his back injury was included, and it did not *release* Employer from liability for that specific injury.[6]

5. This Court's scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

6. Section 449 of the Act, 77 P.S. § 1000.5, provides:

> Every compromise and release agreement by stipulation shall be in writing and duly executed.... The document shall specify:
> (1) the date of the injury or occupational disease;
> (2) the average weekly wage of the employe as calculated under Section 309;

There is no dispute that the C & R, by its express terms, only referred to and compromised the inhalation injury. As stated above, ·the C & R described the injury as an inhalation injury of May 22, 1996; it released Employer for the inhalation injury. There was no mention in the C & R of Claimant's work-related back injury or any reference to Claimant's back problems, except for one sentence in Paragraph 6 which stated "the Claimant continued to work through 8/3/98, when he ceased working because of back problems." The C & R did not address disability benefits for the back injury. The compensation Claimant received under the C & R was for past and future medical bills and costs associated with the inhalation injury, only. The C & R did not *release* Employer from **all** liability. Claimant only agreed to *release* Employer from liability for the inhalation injury which was the subject of· the C & R.

Moreover, a review of the March 13, 2001, hearing transcript clearly indicates the only injury being compromised in the C & R was the inhalation injury. There was no mention of Claimant's work-related back injury, or any testimony regarding Claimant's understanding of what, if any, impact. the C & R had on the back injury. There were no questions asked by Employers counsel pertaining to Claimant's understanding that he was releasing Employer from liability with respect to his August 3, 1998, back injury. The issue of Claimant's work-related back injury was neither brought to the attention of the first WCJ, even though the record supported

> (3). the injury, the nature of the injury and the nature of the disability, whether total or partial;
> (4) the weekly compensation rate paid or payable....

7. The record indicates prior to drafting the C & R Agreement, Employer's counsel was aware of Claimant's work-related back injury,

that Employer was on notice of that injury,[7] nor was the issue of Claimant's right, in the future, to file a second claim petition if he signed the C & R. Employer does not dispute any of this; nor could it.

Accordingly, whether the C & R met the requirements of Section 449 with respect to the back injury is not the issue. Rather, the issue is whether Claimant's representation in Paragraph 4 of the C & R, to the effect that he sustained no injury other than the inhalation injury, prevents him from filing a subsequent claim for a back injury.

As a general rule, a party to an action is judicially estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. *Trowbridge v. Scranton Artificial Limb Company,* 560 Pa. 640, 747 A.2d 862, 864 (2000); *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149, 1151 (1981). The purpose of judicial estoppel is to uphold the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by changing positions to suit their legal needs. *Trowbridge; Gross v. City of Pittsburgh,* 686 A.2d 864, 867 (Pa.Cmwlth. 1996). Judicial estoppel is unlike collateral estoppel or res judicata, in that it depends on the relationship of a party to one or more tribunals, rather than on relationships between parties. *Sunbeam Corp. v. Liberty Mutual Insurance Co.,* 566 Pa. 494, 781 A.2d 1189 (2001).[8]

because he questioned Claimant about it at a hearing on December 14, 1999. N.T. 12/14/99 at 37; R.R. at 196a.

8. Employer argues that if this Court construes the C & R to relate to the inhalation injury only, and not the back injury, this would encourage claimants to "sandbag" their claims and would undermine the concept of

According to a recent decision by our Supreme Court in *In re S.A.J.*, 575 Pa. 624, 632–33, 838 A.2d 616, 621 (2003), in order to determine if judicial estoppel was appropriately applied by the Board, this Court must address the following questions: (1) whether Claimant assumed an "inconsistent" position when he filed his claim petition after the first WCJ approved the C & R in March 2001; and (2) whether he "successfully maintained" the position he took in the C & R with respect to having suffered no other work related injury.

First, all agree Claimant signed a C & R, approved by the first WCJ on March 13, 2001. The C & R stated that Claimant sustained no work-related injury or disease, other than the inhalation injury, and did not give statutory notice of any other such injury. Then, on July 24, 2001, Claimant filed a claim petition and alleged that on August 3, 1998, he sustained a work-related injury to his back. However, even though Claimant made inconsistent statements, this Court is directed by our Supreme Court to further assess whether Claimant had the opportunity to proffer a sufficient explanation for his contradiction. *In Re S.A.J.*, at 633, 838 at 622.

In *In re S.A.J.*, the putative father contended during a prior child-support action that he had not fathered the child. In so doing, he avoided having to pay child support payments. Ten years later, he sought partial custody, and argued that he was the child's father. The putative father testified that he denied paternity on the advice of his attorney and to make sure that the child was his. However, he admitted he never took a blood test or DNA test to establish paternity, never provided support for the child, never played any role in the childs life, and never made any demands on the mother. He further admitted that he did not contest the termination of his visitation rights. Based on this testimony, the Court concluded the putative father failed to proffer a sufficient explanation for the inconsistency because his actions belied his assertion that he wanted to establish the child was his. *Id.* at 633, 838 A.2d at 622.

■ Here, unlike in *In re S.A.J.*, the second WCJ credited the Claimant's testimony that his attorney, whom he trusted, advised him to sign the C & R and also advised him that it did not affect his back injury claim.[9] Claimant was not questioned at the C & R hearing about his understanding of the legal significance of Paragraph 4, and obviously the first WCJ found nothing of record that established that Claimant's understanding was inconsistent with his attorney's advice. The second WCJ found that "Claimant understood the [C & R] agreement did not affect claimant's back as claimant's counsel had said." WCJ Opinion, 1/28/03 at 4, 35. The WCJ is the ultimate fact finder in compensation cases, and has exclusive province over questions of credibility. *Williams v. Workers' Compensation Appeal Board (Trinity Industries)*, 841 A.2d 164 (Pa. Cmwlth.2004). Since the second WCJ's finding was based on a credibility determination, that finding is conclusive and may not be disturbed on appeal. *Lehigh County Vo–Tech School v. Workmen's Compen-*

finality underlying C & R's. Actually, this Court finds the opposite to be true. If this Court construes the C & R to relate to the back injury, employers would be encouraged to use such language to "sandbag" the release of claims without having to comply with the requirements of Section 449 of the Act.

9. This Court notes that Claimant had different counsel to represent him in connection with the C & R.

*sation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Accordingly, we find that Claimant proffered a sufficient explanation for any inconsistency between the C & R and the subsequent claim petition for the back injury.

Next, the Court must determine whether Claimant successfully maintained his prior position. In *Thompson v. Anderson*, 429 Pa.Super. 532, 632 A.2d 1349 (1993), judicial estoppel was applied to preclude the plaintiff from claiming that defendant's conduct was negligent because she successfully maintained in an earlier proceeding that the same conduct was intentional.

In this case, unlike in *Thompson*, there was nothing produced before the second WCJ to suggest that Claimant advanced his position (that he suffered no other work-related injury) in order to obtain the first WCJ's approval of the C & R, or gain an unfair advantage. To the contrary, the second WCJ found that Claimant signed the C & R because he was advised that it did not affect his back injury claim. When he stated he had not suffered any other work related injury in the C & R, Claimant did not receive any benefit whatsoever, other than that to which he was entitled for the inhalation injury. The first WCJ

approved the C & R without any knowledge of the prior work-related back injury. And further, this Court finds no error by the second WCJ by crediting Claimant's testimony regarding the C & R. This Court concludes that Claimant did not successfully maintain his prior position and the doctrine of judicial estoppel is not controlling.[10]

■ Although the Board did not decide the issues raised by Claimant on appeal, the second WCJ fully addressed the issues and a full and complete record of the proceedings was made.[11]

Claimant asserted on appeal to the Board that the second WCJ erred in concluding: (1) he voluntarily took himself out of the workforce; (2) there was work available to him; and (3) he recovered as of January 23, 2002. The second WCJ specifically found:

Claimant voluntarily retired. I thought defendant was credible that claimant retired. He did not give as a reason that he could not do the work. He did not talk directly with the Bethlehem Steel office where he worked but rather with the headquarters.

I thought defendant was credible that light duty work was available for claimant. He actually did work restricted duty. They had other restricted duty.

10. Claimant raises a third issue, in the alternative: whether a WCJ has authority to modify a C & R where it is incorrect in a material respect. Claimant apparently raises this issue in response to the Board's conclusion that "77 P.S. § 771, does not authorize further WCJ review of C & R Agreements...." Board Opinion at 4. Our review of the second WCJ's Decision, however, reveals he did not modify or set aside the C & R. Rather, in response to Employer's contention that the C & R barred the second claim petition, the second WCJ reviewed the agreement in conjunction with Claimant's testimony and merely concluded it did not cover the back injury, but only compromised the inhalation injury. Section 413(a) of the Act, 77 P.S. § 771, does not prohibit such a review, but, in fact, authorizes

it. *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America)*, 738 A.2d 510 (Pa.Cmwlth.1999) (purpose of 77 P.S. § 771 is to authorize review of workers' compensation agreements and empower the WCJ to update, correct and resolve errors and mistakes in workers' compensation claims).

11. As we noted in *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa.Cmwlth.128, 481 A.2d 374 (1984); and *Coleman v. Workers Compensation Appeal Board (Indiana Hospital and Phico Services Company)*, 808 A.2d 336 (Pa. Cmwlth.2002), our appellate scope of review is essentially the same as that of the Board.

...

I thought it was credible that as of the date of his actual examination, Dr. Dahmus established claimant had recovered rather than speculate on the interpretation of Dr. Lippe's records.

...

I thought claimant voluntarily took himself out of the workforce. Claimant was not happy with his treatment at Bethlehem Steel. Claimant didn't feel that the letters and contacts concerning possible termination were proper when they should have been aware that he had back problems.

WCJ Decision, 1/28/03, at 10–11; R.R. at 272a–273a.

The second WCJ's findings and conclusions are well-supported by substantial evidence of record.

Based on the foregoing, the Order of the Appeal Board docketed at No. A03–0415 and dated November 6, 2003, is vacated and the second WCJ's Order dated January 28, 2003, is reinstated.

### ORDER

AND NOW, this 11th day of May, 2004, the Order of the Workers' Compensation Appeal Board docketed at No. A03–0415 and dated November 6, 2003, is vacated and the Workers' Compensation Judge's Order dated January 28, 2003, is reinstated.