CENTRAL DAUPHIN SCHOOL DIS-
TRICT, and Old Republic Insurance
Company c/o School Claims Services,
LLC, Petitioners

v.

WORKERS' COMPENSATION
APPEAL BOARD (Siler),
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2006.

Decided Oct. 17, 2006.

Gregory D. Geiss, Harrisburg, for peti-
tioner.

MaryKay Rauenzahn, Bechtelsville, for
respondent.

BEFORE: PELLEGRINI, Judge, and
COHN JUBELIRER, Judge, and
LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Central Dauphin School District (Em-
ployer), petitions for review of an adjudica-
tion of the Workers' Compensation Appeal
Board (Board) denying Employer's peti-

tion to compel a physical examination. The Board affirmed the decision of the Workers' Compensation Judge (WCJ) that a claimant cannot be ordered to release medical records as part of an independent medical examination (IME). Because we conclude that a claimant's duty to cooperate in a physical examination includes the duty to release prior medical records, we reverse and remand.

The background to this controversy is as follows.[1] On July 19, 2002, while performing custodial duties for Employer, Donna Siler (Claimant) slipped on a floor that was being stripped of wax. As she fell to the floor, Claimant hit her knee, hip, elbow, arm and face. Despite medical treatment, Claimant's condition deteriorated and she began to experience difficulty walking, numbness in her right leg and arm, as well as severe pain in her neck and back. On October 9, 2002, she left work and has not returned.

In December 2002, Claimant filed a claim petition alleging work related "musculoskeletal injuries, neurological pathologies and myalgias." Reproduced Record at 3a. (R.R. ——) In March 2004, WCJ Williamson granted Claimant's claim petition, finding that she suffered from "work related fibromyalgia, neurological problems, musculoskeletal problems involving the lumbar region, right hip, right leg and right arm" as well as "altered states of consciousness." R.R. 7a. WCJ Williamson also found that Claimant takes medications for "attention deficit, depression, fibromyalgia and seizures. Her symptoms are not purely psychological, but have psychological components." R.R. 7a.

Thereafter, Employer requested Claimant to attend one IME by a neurosurgeon and a second by a psychiatrist. Claimant did so. During the course of her psychiatric examination by Gladys S. Fenichel, M.D., Claimant stated that she had previously been treated for psychiatric problems. Thereafter, Dr. Fenichel advised Employer that she would be unable to render an opinion without reviewing Claimant's prior psychiatric medical records. Employer requested Claimant to release these prior records, but she refused.

Employer then filed a petition to compel a physical examination, requesting that the WCJ direct Claimant to release her psychiatric treatment records or face suspension of her benefits. The case was assigned to a WCJ, who received no evidence because he concluded that the issue was purely legal. Accordingly, the WCJ directed the parties to file briefs addressing the legal question of whether a WCJ can order a claimant who undergoes a physical examination to release prior medical records.

The WCJ, in an abbreviated, five-sentence decision, denied Employer's petition for the stated reason that "the parties are bound by the provisions of the Pennsylvania Workers' Compensation Act."[2] R.R. 39a. Employer appealed to the Board. It concluded that because Claimant had established a work-related psychological injury in the course of her claim petition proceeding, Employer should have sought the records in question while the claim petition was being litigated. The Board affirmed the WCJ.

1. These facts are taken from a decision rendered by WCJ Francis Williamson on March 19, 2004, on the claim petition of Donna Siler. This earlier WCJ decision was made part of the record in this proceeding on Em-

ployer's petition to compel physical examination.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

On appeal,[3] Employer presents one issue for our consideration: whether the WCJ erred in concluding that he lacked authority to order Claimant to release her medical records as part of her independent "physical examination."

Employer argues that under the Workers' Compensation Act, it had a right to compel Claimant to undergo a physical examination and, further, that a physical examination necessarily includes the release of her relevant medical records, which in this case were her psychiatric treatment records. For her part, Claimant argues that the medical treatment records sought are protected by statute at 42 Pa.C.S. § 5944.[4] Further, she asserts that these records are not relevant because she has not sought compensation for her psychological problems. Employer counters that these records are relevant given the findings in WCJ Williamson's decision that Claimant's work-related injuries consisted of, *inter alia,* an altered state of consciousness and fibromyalgia, symptoms with a psychological component.

■ We begin our review with Section 314 of the Workers' Compensation Act, 77 P.S. § 651. In relevant part, Section 314 states as follows:

At any time after an injury the *employe,* if so requested by his employer, *must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert* .... If the employe shall refuse upon the request of the employer, to submit to the examination or expert interview ... a workers' compensation judge ... may, upon petition of the employer, order the employe to submit to such examination or expert interview.... *The refusal* or neglect, *without reasonable cause* or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, *shall deprive him of the right to compensation,* under this article, during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

77 P.S. 651 (emphasis added). Independent medical examinations are used to assess the extent of a claimant's injuries. *Maranc v. Workmen's Compensation Appeal Board (Bienenfeld),* 156 Pa.Cmwlth. 572, 628 A.2d 522, 524 (1993). A claimant

---

**3.** The grant or denial of an employer's request to compel a physical examination or expert interview pursuant to Section 314(a) of the Workers' Compensation Act, 77 P.S. § 651, is discretionary with the WCJ, and this Court will not interfere with that decision absent an abuse of discretion. *Pancoast v. Workers' Compensation Appeal Board (City of Philadelphia),* 734 A.2d 52 (Pa.Cmwlth.1999). Where, however, we consider the meaning of the Act, our review is plenary. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer),* 894 A.2d 214, 217 (Pa. Cmwlth.2006). Here, the question is how to construe Section 314 of the Workers' Compensation Act and, thus, our review is plenary.

**4.** It states in relevant part as follows:

No psychiatrist or person who has been licensed to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between any attorney and client.

42 Pa.C.S. § 5944. Claimant does not assert, however, that this privilege applies to a workers' compensation proceeding where an employee seeks benefits for a work-related psychological injury.

must cooperate in these examinations, and cooperation requires more than mere attendance at the appointed time and place.

*Coleman v. Workers' Compensation Appeal Board (Indiana Hospital and Phico Services Company)*, 808 A.2d 336, 339 (Pa. Cmwlth.2002) is instructive here. In that case, the claimant attended an IME but refused to undergo the diagnostic testing requested by the physician doing the examination. The employer filed a petition to compel physical examination, arguing that a "physical examination" under Section 314 of the Workers' Compensation Act includes diagnostic testing. The claimant countered with evidence consisting of its expert's opinion that a

> *"physical examination" refers to the detection of physical injury or disease by trained use of the senses to personally look, listen, touch, etc.* Use of sense-extenders such as blood pressure cuffs, stethoscopes, ophthalmoscopes, tongue blades, reflex hammers, and so on are part of a physical examination. In my opinion, imaging studies such as x-ray, ultrasound, CT scan, MRI, and radioisotope scanning are separate and distinct from a physical examination. Those diagnostic or laboratory tests are not part of the physical examination.

*Id.* at 337 (emphasis added). This Court held otherwise. Although the phrase "physical examination" used in Section 314 refers to a physician's physical touch, we concluded that such a "physical examination" requires more. We explained as follows:

> As medical science has progressed, diagnostic testing has become a standard tool of the medical profession and has proven to be valuable in the detection of physical injury or disease ... Diagnostic testing such as x-rays, MRIs and CT scans have unquestionably aided health care providers in their ability to determine the extent of a claimant's injuries in cases where a mere physical touch would not yield such information. Hence, we conclude that non-invasive diagnostic testing such as an MRI or bone scan falls within the meaning of the term *physical examination* for purposes of Section 314 of the Act.

*Id.* at 339 (emphasis in original). Our Supreme Court affirmed, holding that

> The purpose of an examination is to assess the extent and severity of a claimant's injury. Consistent with this purpose, we interpret the term "physical examination" to include all reasonable medical procedures and tests necessary to permit a provider to determine the extent of a claimant's disability.

*Coleman v. Workers' Compensation Appeal Board (Indiana Hospital and Phico Services Company)*, 577 Pa. 38, 46, 842 A.2d 349, 354 (2004).

■ If a claimant can be compelled to undergo additional diagnostic tests as part of a "physical examination" conducted under Section 314 of the Workers' Compensation Act, then a claimant can be required to release medical records and test results that preceded the Section 314 examination. Indeed, a medical opinion that is rendered by a medical professional who has not reviewed the claimant's medical history and records can render the proffered opinion incompetent. *See e.g., Long v. Workers' Compensation Appeal Board (Integrated Health Service, Inc.)*, 852 A.2d 424, 428 (Pa.Cmwlth.2004). We hold, therefore, that a claimant's prior medical records fall within the meaning of "physical examination" for purposes of Section 314 of the Workers' Compensation Act. Accordingly, a WCJ may order the release of these records when refused by a claimant.[5]

■ We reverse the decision of the Board. It erred in affirming the WCJ's decision that he did not have authority to order Claimant to release her medical records, which in this case are psychiatric treatment records, in the context of a petition to compel a physical examination. Because we do not decide whether these records are relevant, a matter in dispute by Employer and Claimant, we remand this matter for further proceedings on Employer's petition to compel physical examination to resolve this question.

## ORDER

AND NOW, this 17th day of October, 2006, the order of the Workers' Compensation Appeal Board dated March 8, 2006, is hereby reversed. This matter is remanded for further proceedings on the question of whether a psychiatric examination of Claimant is relevant.

Jurisdiction relinquished.

**5.** Indeed, at argument before this court, Claimant's counsel conceded that the release of medical records could be compelled as part of an IME. However, Claimant contends that since she has not sought compensation for her psychiatric treatment, these records are not relevant. Under Claimant's theory, the IME with Dr. Fenichel was not relevant. Employer argues that because Claimant's work-related injuries include altered states of consciousness and fibromyalgia, these records are relevant.