# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Rice,                :

          Petitioner          :

                      :

          v.                :

                      :

Spirac USA, Inc.          :

(Workers' Compensation    :

Appeal Board),          :   No. 1239 C.D. 2022

          Respondent      :   Submitted:  June 5, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED:  July 3, 2023

Jeffrey Rice (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) November 2, 2022 order affirming the WC Judge's (WCJ) decision that denied Claimant's Claim Petition for WC benefits (Claim Petition).  Claimant presents four issues for this Court's review: (1) whether Spirac USA, Inc.'s (Employer) expert testimony was competent; (2) whether the WCJ capriciously disregarded evidence; (3) whether the WCJ's judgment was manifestly unreasonable; and (4) if Claimant prevails, whether he is entitled to counsel fees.[1]  After review, this Court affirms.

---

[1] Claimant also presented the issue of whether the WCJ erred by finding Claimant's expert's testimony incompetent.  *See* Claimant Br. at 4.  However, the Board disagreed with the WCJ and determined Claimant's expert's testimony was indeed competent.  Employer argues that the WCJ was correct, but Employer did not appeal from the Board's decision.  Thus, that issue is not properly before this Court.

Claimant is a Regional Sales Manager for Employer. Claimant allegedly contracted necrotizing fasciitis, a bacterial disease resulting in multiple surgeries, by an exposure to Escherichia coli (E. coli) bacteria while on a one-day overnight business trip to Little Rock, Arkansas, on August 5, 2019. *See* Reproduced Record (R.R.) at 6a. On September 9, 2019, Employer issued a Notice of WC Denial (NCD). The NCD indicated that the claim was denied because Claimant did not suffer a work-related injury, and the injury was not within the scope of his employment.[2] *See* R.R. at 5a. On October 22, 2021, Claimant filed the Claim Petition, therein alleging total disability from August 5, 2019, and ongoing.

The WCJ held hearings on February 16 and April 18, 2022. On May 13, 2022, the WCJ denied the Claim Petition, concluding that Claimant failed to meet his "burden of persuasion, particularly as to the timing of the bacterial exposure[.]" WCJ Dec. at 5. The WCJ adopted and attached Employer's Summary of Evidence. Claimant appealed to the Board. On November 2, 2022, the Board affirmed the WCJ's decision. The Board concluded: "Taken as a whole, [Claimant's expert, Jeffrey D. Gaber, M.D., FACP's (Dr. Gaber),[3]] testimony is not equivocal, he did not recant his opinions, and he explained that he held his opinions within a reasonable degree of medical certainty. We therefore do not agree that Dr. Gaber's opinion was deficient." Board Dec. at 12. However, the Board continued: "Notwithstanding, we cannot agree that the [WCJ's] credibility determinations were inadequate." *Id.* Claimant appealed to this Court.[4]

---

[2] The NCD indicated that the injury included a leg amputation. *See* R.R. at 4a.

[3] The reference to FACP indicates that Dr. Gaber is a Fellow of the American College of Physicians.

[4] "Our scope of review in a [WC] appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pocono Mt. Sch. Dist. v. Kojeszewski (Workers' Comp. Appeal Bd.)*, 280 A.3d 12, 16 n.4 (Pa. Cmwlth. 2022).

Claimant first argues that Employer's expert, S. Michael Phillips, M.D.'s (Dr. Phillips) opinions are incompetent. Specifically, Claimant contends that, when considered as a whole, and in conjunction with his July 26, 2020 report, Dr. Phillips' opinions are not supported by a correct, complete foundation - his opinion is contrary to criteria identified in his report, and he disregards - or did not know - *necessary* facts, such as a meeting that occurred in a waste water equipment warehouse. Claimant cites *Long v. Workers' Compensation Appeal Board (Integrated Health Service, Inc.)*, 852 A.2d 424 (Pa. Cmwlth. 2004), to support his position.

> The law is well settled:
>
> [A] determination of whether certain medical evidence is competent is a conclusion of law reviewable on appeal. *Dillon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 853 A.2d 413 (Pa. Cmwlth. 2004)[.] . . . Competency, when applied to medical evidence, is merely a question of whether a witness's opinion is sufficiently definite and unequivocal to render it admissible. *Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932 (Pa. Cmwlth. 2004)[.] . . .
>
> In addition, a medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391 (Pa. Cmwlth. 2001). Moreover, "[t]he fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003).

*Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006).

The *Long* Court held: "An opinion that is rendered where the medical professional does not have a complete grasp of the medical situation and/or the work

3

incident can render the proffered opinion incompetent." *Long*, 852 A.2d at 428. In

*Long*,

> [the e]mployer [] offered the deposition of Dr. Murray Robinson[ (Dr. Robinson)], who at [the e]mployer's request examined [the c]laimant on August 20, 1999. In his report, Dr. Robinson state[d] that [the c]laimant suffered from cervical disc disease and cervical radiculopathy because of the progression of her disc herniation, which was caused by the injury sustained on April 10, 1999. Dr. Robinson stated that the [c]laimant's work injury aggravated her preexisting C5-6 herniated disc. Dr. Robinson also stated that the [c]laimant should consider cervical surgery and could perform only sedentary work.
>
> Subsequently, and it is alleged at the urging of [the] employer's counsel, Dr. Robinson reviewed pictures of the bathroom mirror that it is alleged fell upon [the c]laimant, and Dr. Robinson revised his opinion and issued a new report on November 4, 1999. Dr. Robinson's revised opinion was that based on the pictures he reviewed, the mirror in the picture could not have caused [the c]laimant's cervical spine injury, or any of the associated soft tissue injury. Dr. Robinson stated that the [c]laimant did not sustain trauma significant enough to cause a head injury. Dr. Robinson then opined that the most likely cause for the progression of [the c]laimant's C5-6 disc herniation was the [c]laimant's degenerative disc disease. **On cross-examination, Dr. Robinson admitted that he had no information upon which to base his conclusion.** He stated that **he had no idea how much the mirror that struck** [the c]laimant **weighed, of what material it was made, the rate of speed it could fall**[,] **or the distance it could have fallen.**

*Id*. at 426-27 (emphasis added; internal record citations omitted). The *Long* Court

concluded, based on the above, that Dr. Robinson's testimony was incompetent.

Here, Dr. Phillips was well aware that Claimant contracted E. coli, and that Claimant

was alleging that he contracted it in Little Rock, Arkansas, based on news reports

4

that there had been an outbreak of E. coli in Arkansas two and a half months before Claimant's work visit. *See* R.R. at 361a.

Dr. Phillips expressly testified:

Now, the thing that I want to point out at this point is that this degree of infection, which was bilateral, which had a long antecedent history of multiple infections in the same area, which extended from -- according to the [computed tomography scan or] CT, from the knee to the ankle, without any abscess formation, didn't happen overnight. That type of an infection and so on will require several weeks to get as severe as it was. Certainly it would be much -- it had to have occurred long before he went on this business trip.

R.R. at 349a. Dr. Phillips concluded:

Q. . . . . Let me just ask you a couple of questions just going off of your report rather than just you having to refer and read it in. You've indicated in your testimony that there was a long history of infection that preceded the trip to Arkansas and also the amputation itself, that he had active lesions both before, during, and after the trip -- I guess he got down there on August 5th, he left there on August the 6th -- and that there was no unusual exposure to any kind of bacteria during that time, he wasn't going to places where there was standing water or handling fouled water of any type, that we're aware of, based upon his testimony.

Doctor, with regard to the infection itself, based upon that criteria, do you have an opinion within a reasonable degree of medical certainty as to whether the infection that set in and was addressed in the first week and second week of August 2019, which ultimately resulted in the amputation of the right leg, was at all related to [Claimant's] work activities or any exposures during those work activities?

A. Yes. My opinion is that there's no evidence of any unusual exposure during that period of time, and there is no relationship between his work activity and the course of this illness. It would have happened if he went on that trip or if he didn't go on the trip.

5

R.R. at 360a-361a.

Relative to Dr. Phillips' testimony, the WCJ described, in relevant part:

6. . . . . [O]n the medical opinions expressed by Dr. Phillips, [Employer's] medical expert, whose opinions are accepted over those presented by Dr. Gaber, as in conflict. In this regard, *inter alia*, while Dr. Gaber medically implicated the Arkansas visit in that symptoms developed within days of the visit, **Dr. Phillips opined that Claimant's bacterial infection was so severe within the relevant time period as to preclude the Arkansas visit as being the source of Claimant's condition**. In sum, as noted by Dr. Phillips, Claimant's bacterial infection (caused by E.[ ]coli - which is ubiquitous in nature, appearing everywhere) was so severe that its progression would have occurred whether [C]laimant had visited Little Rock, Arkansas, or not. (Dr. Phillips, [R.R. at 361a.]) **As noted by Dr. Phillips, Claimant's infection required "several weeks to get as severe as it was . . . it had to have occurred long before he went on this business trip**." (Dr. Phillips, [R.R. at 349a], [e]mphasis [s]upplied)[.]

7. In accepting Dr. Phillips' medical opinions - negating the Arkansas visit - . . . on the merits, **Dr. Phillips' opinions find support in the multiple medical records he reviewed**. His opinions were reasonable, clear, cogent, and fully explained in every way[.]

WCJ Dec. at 5 (emphasis added).

After thoroughly reviewing Dr. Phillips' testimony, *see* R.R. at 329a-386a, and Dr. Phillips' July 26, 2020 report, *see* R.R. at 421a-439a, this Court agrees with the WCJ. Contrary to Claimant's assertions, Dr. Phillips' testimony and July 26, 2020 report were both internally consistent, consistent with each other, and fully supported by the medical records Dr. Phillips reviewed. Concerning whether Dr. Phillips disregarded - or did not know - particular facts, such as a meeting that occurred in Arkansas in a waste water equipment warehouse, that "goes to the weight given the expert's testimony, not its competency." *Pryor*, 923 A.2d at 1203 (quoting

6

*Marriott Corp.*, 837 A.2d at 631 n.10). Accordingly, because Dr. Phillips' testimony "is sufficiently definite and unequivocal to render it admissible," it is competent. *Pryor*, 923 A.2d at 1203.

Claimant next argues that Employer's Summary of Evidence that the WCJ adopted was insufficient/misleading. Specifically, Claimant contends that Employer omitted reference to (i.e., capriciously disregarded) *necessary* facts, impacting the WCJ's credibility evaluation, including the unrefuted fact that Claimant attended a meeting in a waste water equipment warehouse in Arkansas, and that Dr. Phillips did not know or identify that fact. Therefore, Claimant asserts that the WCJ's credibility rationale was not supported by the record as a whole.

Initially, the WCJ stated at the close of the July 12, 2021 hearing: "And, of course, I need a Summary of Evidence, . . . separately filed as an exhibit due to the virus situation." R.R. at 458a. Claimant's counsel responded: "Yes." *Id.* Further, "a WCJ '*may* adopt, verbatim, findings of fact submitted by a party so long as substantial evidence in the record supports the findings.' [*Cnty.*] *of Del*[.] *v. Workmen's Comp*[.] *Appeal* [*Bd.*] *(Thomas)*, . . . 649 A.2d 491, 495 ([Pa. Cmwlth.] 1994) (emphasis added) . . . ." *Dillon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 853 A.2d 413, 421(Pa. Cmwlth. 2004); *see also McCarraher v. Workers' Comp. Appeal Bd. (Eagleville Hosp.)* (Pa. Cmwlth. Nos. 1983, 1991 C.D. 2014, filed Nov. 3, 2015), slip op. at 15 ("[W]e discern no error in the WCJ's decision to reference and append to his decision [the e]mployer's summary of the evidence, and then render 'hard' findings that fully resolved the petitions before him.").[5]

Claimant essentially argues that Employer's Summary of Evidence misstated facts. Specifically, Claimant testified:

---

[5] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *McCarraher* is cited for its persuasive value.

Q. Okay. Was there any point in time that you recall in Arkansas that your right ankle was exposed to water?

A. Just the shower, you know, at a hotel.

Q. Do you recall if it rained at all?

A. It rained, I think, when I was leaving. The afternoon that I was leaving I believe it rained. There were some storms that came through that also delayed flights somewhat.

And then I was at a manufacturer's representative's office that was an equipment supplier that was involved in water and wastewater, and they had a shop where they brought used equipment in that had been exposed to water and waste[ ]water applications. So it's industrial-type warehousing.

R.R. at 42a. Employer's Summary of Evidence provided, in pertinent part:

Claimant stated that while on his trip to Arkansas, his right ankle was exposed to water when he showered at his hotel. He attended a meeting at a manufacturer representative's/equipment supplier's offices which contained a shop that contained equipment which may have been exposed to waste[ ]water applications. He made no mention of visiting that shop or handling the equipment. He had something to drink which contained ice which he assumed was made with local water.

R.R. at 603a.

Claimant asserts that, in addition, the WCJ

much like Dr. Phillips, disregarded the 'actual, objective factors' upon which Dr. Gaber based his opinion:

[] [t]he known latency period for the specific bacteria involved; [] [t]he open wound and pre[]existing immune deficiency hastening [C]laimant's reaction to exposure; [] [m]ultiple news articles of known, high levels of E[.] coli bacteria in Arkansas in the weeks preceding [C]laimant's business meeting; [] [t]he meeting occurring in a warehouse storing used waste water equipment; [] [t]he list of criteria cited by Dr. Phillips fully supports Dr.

8

Gaber's opinions; [] [t]he list of criteria cited by Dr. Phillips contradict Dr. Phillips' opinions; and [] [t]he absence of any other logical explanation for when/where [C]laimant was exposed.

Claimant Br. at 21-22.

Importantly, the WCJ stated:

At the outset[,] [i]t is noted the relevant infection, - necrotizing fasciitis, with sepsis - with horrendous impact requiring amputation of the right leg above the knee - is not in dispute. Rather, the claim has been denied, with the determinative issue being whether the infection was initialed [sic] by an E.[ ]coli exposure during the one-day trip to Arkansas. No incident is asserted - as is common in injury/accident cases - and on review, while environmental factors have been presented, e.g., news reports of E.[ ]coli, and beach closings somewhat distance [sic] from Little Rock and earlier than August 2019 - the determinative causal factor is medical in nature.

R.R. at 598a. The WCJ further noted: "Within the focus of Dr. Phillips' testimony and opinions, the testimony of [] Claimant is likewise accepted – it being again noted however that[,] here, the essential determinative issue as to causation is a medical question." R.R. at 599a. The WCJ concluded:

On the outstanding Claim Petition[,] [] Claimant had the burden of proof to establish all elements of compensability; pursuant to the Findings [of Fact], there has been a failure in the burden of persuasion, **particularly as to the timing of the bacterial exposure**, resulting in a denial of the Claim Petition, with corresponding rejection of the medical/subrogation claim.

*Id*. (emphasis added).

"It is well established that the WCJ is the ultimate fact[-]finder and is empowered to determine witness credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72,

9

76 (Pa. Cmwlth. 2000). In a substantial evidence challenge,

> it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. . . . We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. . . . If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.
>
> *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citations omitted). This inquiry requires that we "view the evidence in the light most favorable to the prevailing party and give [that party] the benefit of all inferences reasonably deduced from the evidence." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161-62 (Pa. Cmwlth. 2016).

*Columbia Cnty. Comm'rs v. Rospendowski (Workers' Comp. Appeal Bd.)*, 286 A.3d 436, 445-46 (Pa. Cmwlth. 2022).

Here, the WCJ made it clear that he did not believe Claimant contracted E. coli in Arkansas because he believed Dr. Phillips' testimony that, based on the medical evidence, Claimant contracted E. coli before his trip to Arkansas. "[V]iew[ing] the evidence in the light most favorable to the prevailing party[, Employer,] and giv[ing] [Employer] the benefit of all inferences reasonably deduced from the evidence[,]" *Rospendowski*, 286 A.3d at 445-46 (quoting *Edwards*, 134 A.3d at 1161-62), this Court holds that substantial evidence supported the WCJ's findings. Accordingly, the WCJ's credibility rationale was supported by the record as a whole.

Claimant next argues that the WCJ's judgment was manifestly unreasonable. Specifically, Claimant contends

10

a capricious disregard of evidence and/or an abuse of discretion are NOT limited to circumstances of willful conduct by a WCJ, but include situations where 'overwhelming evidence' contrary to the decision reached could not logically have been overlooked, and/or where the judgment exercised was manifestly unreasonable.

Based on the evidence [] cited above, either or both circumstances apply here, based largely on having adopted an insufficient Summary of Evidence, which does not adequately or accurately convey the necessary facts of the case. As a result, there was necessary evidence that was disregarded by the WCJ in assessing credibility and competence; and an exercise of judgement that was not reasonable in light of the disregarded facts.

Claimant Br. at 22.

A capricious disregard only occurs when the WCJ deliberately ignores relevant, competent evidence. *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.)*, 851 A.2d 997, 999 (Pa. Cmwlth. 2004). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). Nonetheless, "**where there is substantial evidence to support** [**a WCJ's**] **factual findings**, **and those findings in turn support the conclusions**, **it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard**." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, . . . 812 A.2d 478, 487 n.14 ([Pa.] 2002).

*Dep't of Corr. - SCI Chester v. Faison (Workers' Comp. Appeal Bd.)*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021) (emphasis added).

Further,

a WCJ's decision must satisfy the reasoned decision requirements of Section 422(a) of the [WC] Act [(Act)],[6]

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

11

77 P.S. § 834. Section 422(a) [of the Act] provides, in relevant part, that

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. § 834. To satisfy the reasoned decision requirements, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. *Daniels* [*v. Workers' Comp. Appeal Bd. (Tristate Transp.)*], 828 A.2d [1043,] 1047 [(Pa. 2003)]; *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 (Pa. Cmwlth. 2006). In the face of conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834. "**Section 422(a) [of the Act] does not require the WCJ to discuss all of the evidence presented**[ ]" but only "**to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision**." *Dorsey*, 893 A.2d at 194 n.4. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another[ ]" and to "permit adequate appellate review." *Id*. at 194, 196.

*Faison*, 266 A.3d at 736-37 (emphasis added).

Here, as stated above, the WCJ made clear that he did not believe Claimant contracted E. coli in Arkansas because he believed Dr. Phillips' testimony that, based on the medical evidence, Claimant contracted E. coli before his trip. Because "there is substantial evidence to support [the WCJ's] factual findings, and those findings in turn support the conclusions," *Faison*, 266 A.3d at 736 (quoting *Marlowe*, 812 A.2d at 487 n.14), and the WCJ "ma[d]e the findings necessary to resolve the issues raised by the evidence and relevant to the decision[,]" *Faison*, 266

12

A.3d at 737 (quoting *Dorsey*, 893 A.2d at 194 n.4), the WCJ's judgment was not manifestly unreasonable.[7]

       For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[7] Having disposed of all issues in Employer's favor, the issue of whether Claimant is entitled to counsel fees is moot.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Rice,
               Petitioner

         v.

Spirac USA, Inc.
(Workers' Compensation
Appeal Board),
               Respondent

:
:
:
:
:
:
:
:
:
:   No. 1239 C.D. 2022
:

## O R D E R

AND NOW, this 3rd day of July, 2023, the Workers' Compensation Appeal Board's November 2, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge