**Natrona LONG, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (INTEGRATED HEALTH SERVICE, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 2004.

Decided May 12, 2004.

Reargument Denied July 9, 2004.

Kenneth M. Kapner, Pittsburgh, for petitioners.

Christopher S. Koller, Exton, for respondent.

BEFORE: COLINS, President Judge and SMITH–RIBNER, Judge and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

Natrona Long (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge's (WCJ) granting Claimant's claim petition for a closed period and suspending benefits thereafter pursuant to the Workers' Compensation Act.[1] We affirm.

On July 22, 1999 Claimant filed two petitions, a claim petition in which she alleged that she sustained a work-related injury on April 10, 1999 and a penalty petition alleging that Integrated Health Service, Inc. (Employer) violated Sections 406.1(a) and (3) of the Workers' Compensation Act when it failed to promptly investigate the injury, and failed to promptly pay compensation. In support of her petition, Claimant testified that on April 10, 1999 while working for employer as a certified nursing assistant, as she was assisting a patient to wash and dress, Claimant bent over the sink and faucet to use the soap dispenser that was mounted on the left-hand side of the mirror over the sink, and the mirror dislodged from the top mountings and struck her on the forehead at the hairline above the right eye, causing a bruise on her forehead, and causing her to be dazed. Claimant went to the hospital emergency room where she was treated for head and neck pain. Claimant alleges that her injury caused her to stop working on April 10, 1999. Claimant seeks partial disability benefits for the period April 11, 1999 to May 19, 1999 and full disability from May 20, 1999 into the future. Employer denied all material allegations in the claim petitions on the basis that Claimant failed to establish that her complaints and total disability were related to any work injury. The matter was presented to a WCJ on August 19, 1999.

Before the WCJ, Claimant presented the deposition testimony of her treating physician, William M. King, D.O., a practitioner of family medicine. Dr. King[2] testified that he previously treated Claimant in 1994, 1996, and 1997 and that he first saw Claimant for the April 1999 injury on June 11, 1999 when she came to his office with complaints of headache and neck pain. Claimant related the cause of her injury, and stated that following treatment at the Chestnut Hill Hospital, Claimant went to the Injury Center. Because her headache became more severe and she noticed severe neck pain, which radiated into both arms, Dr. King stated that Claimant relat-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. The WCJ set forth in his findings that Dr. King is not board certified in family medicine, no longer has hospital privileges, is not a panel physician for employer IHS, and that about 30 percent of his overall practice involves patients who are involved in some kind of accident, whom he may see 25, 30, or 40 times.

ed to him that she took a few days off work. When the Injury Center directed that she return to work, Claimant received permission to obtain a second opinion. Claimant then visited with Dr. King.

Dr. King further testified that a cervical MRI performed on May 21, 1999 revealed moderate disc degeneration with a left paramedian herniated nucleus pulposus at C5–6 having increased in size from the previous MRI performed in 1997.[3] Dr. King testified that Claimant's range of cervical motion was reduced to 50 percent of normal, that Claimant had pain with flexion and extension, and that Claimant had pain along both sides of her neck radiating into her shoulder tops and arms, along with tenderness and myospasm over her trapezii bilaterally and over her C7–T1 interspace. (R.R. 403a–404a). Dr. King opined that as a direct result of her injury, Claimant suffered from post-traumatic cephalgia and an aggravation of her cervical aggravation injury and suffered from bilateral radiculopathy. Dr. King prescribed physical therapy and Percocet, Zanax, Esgi, and Valium for Claimant's pain. Dr. King opined that Claimant was disabled from working as a nursing assistant. Dr. King subsequently referred Claimant to Dr. Howard a registered physical therapist and podiatrist. Dr. King also referred Claimant to Dr. Michael Cohen for a neurological consultation.

In opposition to the claim petition, employer presented the testimony of Dr. Ruben Zabeleta, who treated Claimant at NovaCare Occupational Health Services from April 12 to April 15, 1999. Dr. Zabeleta testified that Claimant complained of head pain, neck pain radiating into her right shoulder, and blurred vision. Dr. Zabeleta stated that upon examination Claimant had slight swelling over her right forehead area, restricted range of cervical motion with questionable tenderness over her paravetebral muscles. (R.R. 145a, 151a–153a, 176a). Dr. Zabeleta diagnosed Claimant as suffering from a contusion to the skull and a possible cervical strain. He further testified that when he examined Claimant on April 14, 1999 she complained of "pounding" headaches as well as neck and shoulder pain. Finally, he stated that Claimant was able to perform a full range of cervical and shoulder motion, she did not have cervical spasm, and that she had a normal neurological examination. Dr. Zabeleta testified that on April 14, 1999, he released Claimant to return to full duty but on an as needed basis even though she still had a contusion on the skull. Finally, Dr. Zabeleta testified that on April 15, 1999, Claimant came to his office complaining that she was having difficulty working because of her pounding headaches, and asked to see another physician for a second opinion. Without examining Claimant, Dr. Zabeleta agreed to Claimant obtaining a second opinion.

Employer also offered the deposition of Dr. Murray Robinson, who at Employer's request examined Claimant on August 20, 1999. In his report, Dr. Robinson states that Claimant suffered from cervical disc disease and cervical radiculopathy because of the progression of her disc herniation, which was caused by the injury sustained on April 10, 1999. Dr. Robinson stated that the Claimant's work injury aggravated her pre-existing C5–6 herniated disc.

3. There is an inconsistency between the record and the findings of the WCJ regarding whether the MRI was performed in 1987 or 1997. The WCJ in Finding of Fact No. 7, states that the MRI was performed in November of 1987. However, throughout other findings of the WCJ and the record there is support for the conclusion that the date is 1997. This Court concludes that in all likelihood, 1987 is a typographical error, and the correct date is 1997.

Dr. Robinson also stated that the Claimant should consider cervical surgery and could perform only sedentary work. (R.R. 54a–55a, 74a).

Subsequently, and it is alleged at the urging of employer's counsel, Dr. Robinson reviewed pictures of the bathroom mirror that it is alleged fell upon Claimant, and Dr. Robinson revised his opinion and issued a new report on November 4, 1999. Dr. Robinson's revised opinion was that based on the pictures he reviewed, the mirror in the picture could not have caused Claimant's cervical spine injury, or any of the associated soft tissue injury. Dr. Robinson stated that the Claimant did not sustain trauma significant enough to cause a head injury. (R.R. 56a, 59a–60a– 100a). Dr. Robinson then opined that the most likely cause for the progression of Claimant's C5–6 disc herniation was the Claimant's degenerative disc disease. On cross-examination, Dr. Robinson admitted that he had no information upon which to base his conclusion. He stated that he had no idea how much the mirror that struck Claimant weighed, of what material it was made, the rate of speed it could fall or the distance it could have fallen.

The WCJ found credible Claimant's testimony as to the events of April 10, 1999. The WCJ found not credible Claimant's testimony regarding the pain she suffered following the incident. The WCJ found not credible the testimony of Claimant's medical expert, Dr. King.

The WCJ found credible Dr. Zabaleta's opinion that Claimant was able to resume full-duty employment as of April 14, 1999. The WCJ also found credible Dr. Robinson's revised opinion that Claimant's condition was the not the result of the work injury. The WCJ granted the claim petition for the period April 12, 1999 and including April 13, 1999; however, since the period did not exceed seven days, no compensation was awarded, and compensation was suspended. In addition, the WCJ found there was a reasonable basis for the contest and dismissed the penalty petition. The WCAB affirmed; Claimant has filed a petition for review in this Court.

■ Initially, we note that our scope of review is limited to determining whether constitutional errors occurred, whether there were errors of law, or whether substantial evidence of record supports the necessary findings of fact and conclusions of the WCJ. *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper),* 165 Pa.Cmwlth.696, 645 A.2d 957 (1994). Substantial evidence is such evidence that a rational person could accept to support the WCJ's conclusion. *Id.*

Claimant contends that the WCAB erred in affirming the WCJ as the WCJ's decision is not supported by substantial evidence because the decision is based upon the revised opinion of Dr. Robinson, which opinion Claimant alleges is incompetent. Claimant focuses her argument on the two starkly different opinions rendered by Dr. Robinson. Claimant alleges that Dr. Robinson changed his opinion in large measure at the urging of counsel, and further, that the revised opinion is based on an insufficient foundation.

There is no serious dispute to the facts surrounding the revision of Dr. Robinson's opinion. Dr. Robinson initially opined that Claimant sustained a significant trauma as a result of the April 10, 1999 incident. Dr. Robinson received three letters from counsel for Travelers strongly urging Dr. Robinson to reevaluate his conclusions and including an alleged photograph of the mirror to help Dr. Robinson consider the veracity of Claimant's statements concerning the events. The WCAB states that Dr. Robinson reviewed an accident reconstruction of events. If in fact that is so, it

is not part of the record. Of record is that Dr. Robinson reviewed a photograph of the alleged mirror that struck Claimant. That photograph does not amount to an accident reconstruction. Furthermore, this Court finds very troubling the events surrounding the testimony of Dr. Robinson.

■ Rather than accept Dr. Robinson's candid and apparently unsatisfactory medical opinion concerning Claimant's condition, counsel for the insurance company came perilously close to violating Disciplinary Rule 3.4(b) relating to assisting a witness to testify. The Court has reviewed the testimony of Dr. Robinson and notes that Dr. Robinson either had, or should have had, Claimant's complete medical records at his disposal at the time of examination. While Claimant did not relate her complete medical history to Dr. Robinson, it is not the history with which there was concern, but rather, the mirror and the events of April 10, 1999. Based on a photo, Dr. Robinson recanted his previous statements. Since, at the time that Dr. Robinson rendered either of his medical opinions, he did not have Claimant's complete medical history, and on both occasions, he had only partial information relating to the April 10, 1999 incident, we disagree with the WCAB's conclusion that Dr. Robinson's testimony was competent. An opinion that is rendered where the medical professional does not have a complete grasp of the medical situation and/or the work incident can render the proffered opinion incompetent. *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 96 Pa. Cmwlth.613, 508 A.2d 624, 627 n.5 (1986). Remaining is the medical opinion of Dr. Zabaleta. Dr. Zabaleta's unchallenged medical opinion, standing alone, supports a finding that Claimant suffered a work related injury and that the disability period ended on April 14, 1999. The Board correctly concluded that where, as here, a WCJ finds that a claimant's work-related injury does not result in a disability of seven days or more, an employer is merely entitled to a suspension of benefits. *Carpentertown Coal and Coke Company v. Workmen's Compensation Appeal Board (Seybert)*, 154 Pa.Cmwlth.408, 623 A.2d 955, *petition for allowance of appeal denied*, 535 Pa. 640, 631 A.2d 1011 (1993). Furthermore; Employer's contest of the claim was reasonable, thus, the WCJ correctly denied the penalty petition.

Accordingly, the order of the WCAB is affirmed.

### ORDER

AND NOW, this 12th day of May 2004, the order of the Workers' Compensation Appeal Board affirming the Order of the Workers' Compensation Judge is AFFIRMED.