# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,  :
                          Petitioner  :
                                     :
     v.                              :     No. 1407 C.D. 2022
                                     :     SUBMITTED:  July 14, 2023
Dominick Demace, Jr. (Workers'       :
Compensation Appeal Board),          :
                         Respondent  :

BEFORE:  HONORABLE ANNE E. COVEY, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  February 26, 2024**

The Pennsylvania Liquor Control Board, Employer, petitions for review from the order of the Workers' Compensation Appeal Board (WCAB) affirming the Workers' Compensation Judge's (WCJ) decision and order that denied Employer's petition to terminate Claimant Dominick Demace, Jr.'s benefits and amending his work injury to include a diagnosis of lumbar radiculopathy related to disc bulging at the L3-L4, L4-L5, and L5-S1 levels with neuroforaminal stenosis. We affirm.

The facts may be summarized as follows.  On October 29, 2020, Claimant was injured in an auto accident in the course of his employment as a Maintenance Repairman 2 for Employer.  By amended notice of compensation payable, Employer accepted Claimant's injury as strains or tears to his neck and lower back caused by a motor vehicle accident.  In March 2021 Employer filed the

petition to terminate benefits as of February 22, 2021, the date of an independent medical examination (IME) of Claimant by Joshua D. Auerbach, M.D., an orthopedic surgeon.

The WCJ accepted live telephonic testimony from Claimant and Lauren Donmoyer, a Human Resource Analyst 3 for Employer, and testimony by deposition from Dr. Auerbach and Joseph D. Paz, D.O., who specializes in pain management and is Claimant's treating physician. The WCJ's findings of fact ("F.F.") included detailed summaries of the witnesses' testimony. As Employer's arguments center around the WCJ's factfinding, we set forth the relevant portions of those findings herein.

Of relevance to this appeal, Claimant testified as follows. In his job as a Maintenance Repairman 2, he did all types of carpentry repairs and lifted items averaging 50 pounds with some items weighing 90 pounds requiring the use of hand trucks and help from others. Claimant worked full duty and without restriction. After the work incident, Claimant saw numerous doctors. Currently, he treats with Dr. Paz and undergoes aqua therapy. Claimant continues to have headaches with pain in his neck and lower back; he has a tingling sensation in his face, arms, hands, and legs. Claimant has not driven since the work incident and does not believe that he can return to his former position with Employer. Claimant was treating with his family doctor prior to the work incident for "degenerative joint disease and arthritis in his extremities and spine." (F.F. No. 7.) Claimant takes medication for his arthritis and had taken off work prior to the work incident for chronic pain.

The WCJ summarized Dr. Auerbach's deposition testimony as follows:

> Dr. Auerbach saw the Claimant on February 22, 2021. At that time, Dr. Auerbach obtained a history from the Claimant as to how the Claimant suffered the work injury.

2

Dr. Auerbach testified that he reviewed various medical records and performed a physical examination on the Claimant. Dr. Auerbach testified that he also reviewed a lumbar MRI dated November 8, 2020, and a cervical [Magnetic Resonance Image (MRI)] dated November 8, 2020. ***Dr. Auerbach testified that everything on the MRI[] appeared to be chronic degenerative findings.*** Dr. Auerbach opined that as a result of the work injury, the Claimant suffered a cervical and lumbar sprain. ***Dr. Auerbach testified that the Claimant experienced these soft tissue injuries in the setting of preexisting degenerative disease. Dr. Auerbach did not believe that Claimant's preexisting condition was aggravated or worsened by the work injury.*** Dr. Auerbach also opined that the Claimant has fully recovered from the cervical and lumbar sprain, and the Claimant can return to his preinjury position without restrictions. Dr. Auerbach opined that any ongoing restrictions would be related to a preexisting condition. ***Dr. Auerbach testified that he was provided with additional medical records which support his opinion that the Claimant had preexisting degenerative disease of the lumbar and cervical spine and that the work injury was limited to a cervical and lumbar sprain.*** Dr. Auerbach testified that he saw a record from November of 2020, from Intermountain Medical Group indicating that Claimant had been rear-ended with pain in his neck and back and pain with leg raises.

[F.F. No. 7 (emphasis supplied).] The WCJ summarized Dr. Paz's testimony as follows:

Dr. Paz testified that he first saw the Claimant on January 18, 2021, as a result of a referral from Dr. Carl de Luna, a neurosurgeon. Dr. Paz testified that he obtained a history from the Claimant as to how the Claimant suffered the work injury. Dr. Paz testified that the Claimant's main complaints were low back pain, right leg pain, occipital and frontal headaches, neck pain, left arm pain and left shoulder pain. Dr. Paz testified that he reviewed a cervical and lumbar MRI and performed a physical examination on the Claimant. ***Dr. Paz testified that the Claimant had***

3

*spasms throughout the paracervical with trigger points and a positive straight leg raising test on the right and sciatic notch tenderness on the right.* Dr. Paz testified that he recommended aquatic therapy, a neurological exam and consult, and injections into [the] Claimant's lower back and possibly into his neck. Dr. Paz continued to see and treat the Claimant thereafter with his last examination of the Claimant prior to his testimony occurring on September 9, 2021. Dr. Paz testified that the Claimant continued to have neck pain, low back pain, and right lower extremity radiation to the buttock area and occasionally lower. Dr. Paz testified that the cervical spine examination showed motion limitation, paravertebral tenderness, facet joint tenderness and spasm. Dr. Paz testified that the lumbar spine examination showed problems with range of motion on extension and hyperextension with a positive straight leg raising test and sacral tenderness. *Dr. Paz opined that he diagnosed the Claimant with lumbar radiculopathy relating to disc bulging, primarily at L5-S1 with neuroforaminal stenosis but also disc bulging at [L3-L4] and [L4-L5]. Dr. Paz opined that the work injury caused the disc bulging.* Dr. Paz opined that the Claimant has not fully recovered from his work injury. *Dr. Paz opined that the Claimant still suffers from radicular pain from the lower back into the leg which is directly related to the lumbar disc bulge causing a neuroforaminal stenosis.* Dr. Paz testified that he diagnosed the Claimant with aggravation of preexisting arthritis at the neck and lower back. *When asked if he disagreed with Dr. Auerbach's opinion that the Claimant did not aggravate his preexisting degenerative disease, Dr. Paz testified that he believed that the mechanism of injury, the whiplash type motion and the unguarded position that the Claimant was in, certainly could have aggravated that.* Dr. Paz testified that he reviewed summaries of [the] Claimant's primary care physician's records but not the actual records.

[F.F. No. 8 (emphasis supplied).]

The WCJ resolved the inconsistencies between the testimonies of Dr. Auerbach and Dr. Paz as follows:

After a careful review and consideration of the entire evidence of record in this matter, this [WCJ] finds that the Claimant has not made a full and complete recovery from all of the work injuries he suffered as a result of the October 29, 2020 work injury. ***This [WCJ] finds that as a result of the October 29, 2020 work injury, the Claimant suffered a cervical sprain, a lumbar sprain, and lumbar radiculopathy related to disc bulging at L3-L4, L4-L5, and L5-S1 with neuroforaminal stenosis.*** This [WCJ] finds that the Claimant has fully recovered from the cervical sprain and the lumbar sprain work injuries, but ***he has not recovered from the lumbar radiculopathy related to disc bulging at L3-L4, L4-L5 and L5-S1 with neuroforaminal stenosis.*** In finding as such, this [WCJ] finds as credible in part the testimony and opinions of Dr. Auerbach. ***This [WCJ] finds as credible Dr. Auerbach's opinion that the Claimant was fully recovered from the cervical sprain and lumbar sprain work injuries. This [WCJ] also finds as credible Dr. Auerbach's opinion that the Claimant did not aggravate or worsen his preexisting degenerative conditions.*** There is no question that prior to the work injury the Claimant had complaints in his neck and low back and was treating for arthritis. ***In finding Dr. Auerbach's opinion that the Claimant did not aggravate or worsen his preexisting degenerative conditions as being credible, this [WCJ] finds as significant that Dr. Auerbach reviewed the actual medical records concerning Claimant's complaints and treatment prior to the work injury, while Dr. Paz only reviewed prepared summaries and not the actual records. However, this [WCJ] does find as credible and persuasive the medical opinion of Dr. Paz that the Claimant suffered lumbar radiculopathy from bulging discs caused by the work injury and that the Claimant has not fully recovered from the work injury as he continues to have radicular pain from the lower back into the leg which is directly related to the lumbar disc bulge causing a neuroforaminal stenosis.*** In finding Dr. Paz's opinion as being more credible that the Claimant suffered the lumbar radiculopathy from bulging discs caused by the work injury, ***this [WCJ] finds as significant that Dr. Paz, unlike Dr. Auerbach, had the opportunity to examine the Claimant on numerous occasions and***

5

*during those examinations Dr. Paz continued to find a positive straight leg raising test.* This [WCJ] also finds as credible Claimant's testimony that he will not be able to perform his duties as a maintenance repairman 2. *This [WCJ] finds as significant that Claimant's testimony about performing his pre[]injury job duties is supported by Dr. Paz's September 9, 2021 lumbar examination findings. This [WCJ] also finds as significant that Dr. Paz documented that the Claimant continued to have right lower extremity radiation to the buttock area and occasionally lower at the time of the September 9, 2021 examination.*

[F.F. No. 9 (emphasis supplied).]

As stated above, the WCJ amended the work injury to include the additional diagnosis and denied Employer's termination petition. Employer appealed the WCJ's decision and order to the WCAB, arguing that substantial, competent evidence did not support the WCJ's finding that Claimant's work injury should be expanded to include the additional diagnosis.[1] The WCAB affirmed.

On appeal, Employer presents the question involved as follows: "Whether the [WCAB] erred in affirming the decision of [the WCJ] denying Employer's termination petition and expanding the nature of Claimant's work injury to include lumbar radiculopathy related to disc bulging at the L3-L4, L4-L5, and L5-S1 with neuroforaminal stenosis." (Employer Br. at 4.) More specifically, within the argument section, Employer contends that the evidence relied upon by the WCJ to amend the work injury description was incompetent and that the WCJ's finding

---

[1] Employer also raised a due process argument that it has abandoned on appeal.

6

of an additional condition was contrary to the substantial, competent evidence of record.[2] (Employer Br. at 4.)

Employer argues that Dr. Paz's testimony was incompetent because he did not review Claimant's full medical history, including documentation from his previous primary care provider, but rather reviewed summaries prepared by a member of his office staff. In so arguing, Employer points to *Southwest Airlines v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280 (Pa. Cmwlth. 2009), and *Long v. Workers' Compensation Appeal Board (Integrated Health Service, Inc.)*, 852 A.2d 424 (Pa. Cmwlth. 2004). In *Southwest Airlines*, this Court addressed a situation where a treating physician, offered as an expert, had no personal knowledge of the claimant's physical condition prior to the date of her alleged work injury. In that case, the treating physician who diagnosed post-concussive syndrome "did not

---

[2] Initially we note that Employer's brief leaves something to be desired in terms of compliance with Pennsylvania Rules of Appellate Procedure 2116(a), Pa. R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail") and 2119(a), Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein . . . ."). The statement of questions involved and the sole heading in the argument section consist of a bald assertion that the WCAB erred in denying the termination petition and expanding the work injury. Employer does not present discrete issues involved or divide the argument into sections corresponding to the questions to be argued. [*See* Employer Br. at 4 (statement of questions involved) and 32 (heading of argument section)]. Nevertheless, we exercise our discretion and address the arguments in Employer's brief that are fairly suggested by the statement of the question involved and the sole heading in the argument section.

To the extent that Employer's brief suggests another issue, i.e. whether Claimant was required to file a review petition to amend the amended notice of compensation payable (Employer Brief at 36-37), that issue is not fairly suggested by Employer's statement of question involved and is waived. Pa. R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Even if it were not waived, we note that the WCAB properly rejected this argument as meritless, citing *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009*).*

review *any* of the claimant's extensive relevant medical records, which would have revealed two head injuries and complaints of headaches, blurred vision, dizziness and neck pain beginning" several years prior to the alleged work injury, *Southwest Airlines*, 985 A.2d at 287 (emphasis supplied), and the claimant had obfuscated her medical history. This, the Court held, meant that the treating physician's opinions were based on an incomplete and inaccurate medical history, and that as a matter of law, his opinion was not competent to establish a causative link between the work injury and the claimant's disability. *Id.*

In *Long*, an employer presented the testimony of a physician who examined a claimant at the employer's insurer's request and initially produced a report stating that a work incident had caused the claimant's work injury. At the time he saw the claimant, the physician did not perform an examination and did not have the claimant's complete medical history, but opined that conditions were caused by a work incident, only to recant his testimony later when a photograph unrelated to the records was presented to him. *Long*, 852 A.2d at 428. We held that "[a]n opinion that is rendered where the medical professional does not have a complete grasp of the medical situation and/or the work incident can render the proffered opinion incompetent." *Id.*

Here, Dr. Paz reviewed summaries of the pre-incident medical history and thus, unlike the physicians in *Long* and *Southwest Airlines*, did at the time of his testimony have familiarity with Claimant's medical history that was not shown to be incorrect. While one might find that review of summaries was *for certain purposes* inferior to Dr. Auerbach's direct review of the records (as the WCJ himself did), that goes to the weight, not the competence of the evidence. Dr. Paz did review the radiologist's interpretation of the MRI of the lumbar spine, which showed

8

degenerative disc disease and bulges at the levels in question. Dr. Paz, unlike Dr. Auerbach, found objective indication of radiculopathy on several occasions in the form of a positive straight leg test, which the WCJ credited (Dr. Auerbach's examination was negative for indicia of radiculopathy). Dr. Paz further opined that Claimant's lumbar disc bulging was related to his October 29, 2020 work incident, which in turn was related to the disc bulging—an opinion that the WCJ also credited. Notably, Dr. Auerbach testified that he could not state with certainty the cause of the herniated disc because he did not have a preinjury MRI to review. (Auerbach Notes of Test. at 68, Reproduced R. at 124a.) In these circumstances, we cannot find that Dr. Paz failed to grasp the salient facts of Claimant's medical history so as to render his opinion incompetent.

Turning to Employer's contention, interwoven throughout its argument section, that the WCJ's determination was contrary to the substantial, competent evidence of record, it is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight. *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Id.* Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). In assessing whether the findings of fact are supported by substantial evidence, the evidence and every reasonable inference deducible therefrom must be viewed in the light most favorable to the prevailing party. *Wawa v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). It is of no moment that the record contains evidence to support findings other than

those made by the WCJ, as the analysis is only whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Employer's arguments concerning the sufficiency of the evidence primarily address whether Dr. Paz's opinion was competent given his review of summaries of the preinjury medical records instead of the actual records. However, we have rejected the argument that Dr. Paz's testimony was incompetent. Further, we also decline Employer's invitation to reweigh other items of testimony that might have supported findings of fact other than those found by the WCJ, or to unnecessarily find the WCJ's actual findings inconsistent. It was within the ultimate purview of the WCJ to resolve conflicting evidence in making his findings and Claimant as the prevailing party is entitled to every reasonably deducible inference therefrom.

We conclude from our review of the record that there was substantial, competent evidence to support the findings made by the WCJ. Thus, we find that the WCAB did not err by affirming the WCJ's conclusions.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,   :
                          Petitioner   :
                                     :
       v.                              :   No. 1407 C.D. 2022
                                     :
Dominick Demace, Jr. (Workers'   :
Compensation Appeal Board),        :
                       Respondent   :

## **O R D E R**

AND NOW, this 26th day of February, 2024, the order of the Workers' Compensation Appeal Board is AFFIRMED.

 

 

                               _____

                               **BONNIE BRIGANCE LEADBETTER,**
                               President Judge Emerita