# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, Department of Corrections - SCI Chester, | : : : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 307 C.D. 2024 |
| | : | |
| Crystal Faison (Workers' Compensation Appeal Board), | : : | |
| Respondent | : | Submitted: December 9, 2024 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                    FILED:  January 9, 2025

The Commonwealth of Pennsylvania, Department of Corrections - State Correctional Institution at Chester (Employer) petitions for review of the February 26, 2024 opinion and order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) denying Employer's termination petition. Through this appeal, Employer challenges the WCJ's reliance on Claimant's medical expert, a psychoanalyst, and alleges that the WCJ arbitrarily and capriciously disregarded evidence of record in denying its termination petition. After careful review, we discern no error and affirm the Board's order.

**Background**

On May 20, 2018, Crystal Faison (Claimant) sustained a work-related injury in the nature of "post-traumatic stress disorder [(PTSD)] and major depressive disorder [(MDD)]" as a result of being raped while working for Employer. WCJ's Decision at 3; Reproduced Record (R.R.) 21a. Claimant began receiving disability benefits. On March 29, 2022, Employer filed a termination petition alleging Claimant fully recovered from her work-related injuries. Claimant filed an answer denying all allegations and the matter was assigned to a WCJ. In support of its termination petition, Employer presented the deposition testimony of Robin Altman, M.D. In opposition to the termination petition, Claimant testified and presented the deposition testimony of her psychoanalyst, Anthony Tereo, Ph.D.

*Employer's Evidence*

Employer presented the deposition testimony of Dr. Altman, who is board certified in both adult psychiatry and child and adolescent psychiatry. Dr. Altman testified that she interviewed Claimant on February 18, 2022. Altman Dep. at 11; R.R. 274a. At that interview, Claimant relayed information about her childhood, adolescence, and early adulthood. Claimant described herself as a well-behaved child and a rebellious teenager. *Id.* at 13; R.R. 277a. Between ages 12 to 14, she began sexually experimenting with boys. *Id.* at 14; R.R 278a. At age 20, after a failed relationship, Claimant cut her arm. *Id.* at 17; R.R. 280a. She was hospitalized for five days and was advised to attend outpatient therapy but never followed through. *Id.* Claimant got married but the marriage suffered from domestic violence issues. *Id.* at 18-19; R.R. 281a-82a. She has not lived with her husband for several years and is seeking a divorce. *Id.* at 12; R.R. 275a.

2

Dr. Altman also discussed the work incident with Claimant. *Id.* at 21; R.R. 284a. Claimant relayed that while she was working for Employer, she met the perpetrator (hereinafter EG), who was also an employee at SCI-Chester, and they began a sexual relationship. *Id.* at 21-22; R.R. 284a-85a. Claimant explained that EG pulled back from their relationship, and she began seeing someone else. *Id.* at 22; R.R. 285a. Claimant and EG later began communicating again through calls and text messages. *Id.* On May 20, 2018, while EG was working in restrictive housing, he coerced Claimant into having intercourse and that event led to Claimant's work injuries. *Id.*

Following the incident, in early 2019, Claimant told Dr. Altman that she moved to South Carolina to live with her mother and get a fresh start. *Id.* at 22-23; R.R. 285a-86a. At that time, she was not treating with anyone in South Carolina or remotely in Pennsylvania for any mental health condition. *Id.* at 26; R.R. 289a. Claimant began working at the Babcock Center in South Carolina with special needs adults. *Id.* at 23; R.R. 286a. She started dating and became pregnant but ultimately ended up miscarrying in October of 2020. *Id.* at 24; R.R. 287a. The miscarriage was very upsetting, and Claimant entered into therapy. *Id.* Claimant became pregnant again in April of 2021, suffered from many complications, and ultimately gave birth to a stillborn baby in October of 2021. *Id.* at 24-25; R.R. 287a-88a. This was a terrible experience for Claimant. *Id.* At the time of the interview, Claimant told Dr. Altman that she was seeing two therapists.

Following Dr. Altman's interview with Claimant and review of her medical records, Dr. Altman diagnosed Claimant "with borderline personality disorder and felt she was suffering from major depression with peripartum onset that started after her first child was born." *Id.* at 37; R.R. 300a. She opined that Claimant

had recovered from her work injuries caused by the rape and was doing well until the stillborn birth of her child, which caused a separate episode of depression. *Id.* at 37-38; R.R. 300a-01a. Dr. Altman stated that she saw no sign of PTSD during her interview with Claimant and opined that Claimant did not need additional treatment for her work injuries and could return to her full-duty job. *Id.* Dr. Altman clarified that she believes Claimant currently suffers from mental health issues, but those issues are not a result of the rape at work in 2018 but stem from other stressors in her life. *Id.* at 39-42; R.R. 302a-05a.

On cross-examination, Dr. Altman stated that she does not doubt that Claimant was raped in 2018 during her employment with Employer. *Id.* at 47-48; R.R. 310a-11a. She also agreed that while discussing the rape with Claimant, Claimant was sad and did not know how to process the assault. *Id.* at 47-48; R.R. 310a-11a.

*Claimant's Evidence*

Claimant testified by deposition on June 14, 2022, and before the WCJ on November 8, 2022. Claimant explained that she moved to South Carolina with her mother on February 6, 2019, because she could not cope alone following the rape and sought family support. Claimant's Dep. at 8; R.R. 368a. She did not seek psychological treatment for the rest of 2019 while in South Carolina, citing a lack of health insurance. *Id.* On March 19, 2022, Claimant suffered a brain aneurysm that resulted in a stroke. *Id.* at 11; R.R. 371a. She has a shunt in her brain and now suffers from daily headaches. *Id.*

Claimant testified that she began therapy with two therapists in South Carolina for the rape and her two miscarriages. *Id.* at 30; R.R. 390a. Claimant's counsel referred her to Dr. Tereo, who she began seeing before she was hospitalized

4

for the stroke. *Id.* at 34-35; R.R. 394a-95a. Claimant testified that she sees Dr. Tereo virtually and they engage in talk therapy. N.T., 11/8/22 at 9; R.R. 122a. Dr. Tereo has not released Claimant to her preinjury position. *Id.* at 10; R.R. 123a. Claimant testified that she is still experiencing symptoms related to the work incident and her moods have not been normal. *Id.* at 10-11; R.R. 123a-24a. She explained she has "constant flashbacks, images replay, guilt. Just depressed moods, [and] a lot of crying spells[.]" *Id.* at 11; R.R. 124a. She explained she has trouble sleeping and regularly replays the incident and the aftermath. *Id.* at 13; R.R. 126a. She does not believe she could return to her preinjury position. *Id.*

Claimant presented the deposition testimony of Dr. Tereo, a board-certified psychoanalyst. He testified that there is no Pennsylvania license for psychoanalysts, but he practices legally in Pennsylvania under an exception. Tereo Dep. at 8; R.R. 144a. He stated he has been admitted as an expert in state, federal, criminal, and civil courts, including workers' compensation proceedings. *Id.* Dr. Tereo agreed he is not a medical doctor or psychologist and is not licensed as a mental healthcare provider in the Commonwealth. *Id.* at 9-10; R.R. 145a-46a. Dr. Tereo testified that he first saw Claimant on April 12, 2022, and has since met with her 22 to 25 times. *Id.* at 15; R.R. 151a. Dr. Tereo testified that at the time of their first meeting, Claimant discussed the rape and the triggers she faces following the incident. *Id.* at 17; R.R. 153a. Dr. Tereo opined that at their first meeting, Claimant met all the criteria for PTSD and MDD, although there was some amelioration of the depression. He stated that Claimant continues to have negative beliefs about herself and thinks her womb is tainted from the work incident, thus causing her two miscarriages. *Id.* at 18-20; R.R. 154a-56a. Since his first meeting with Claimant until his most recent, Dr. Tereo testified that the depression is alleviating, and

5

Claimant can talk more comfortably about her trauma. *Id.* at 23-24; R.R. 159a-60a. However, he does not believe she has reached full recovery from either PTSD or MDD. *Id.* at 24; R.R. 160a. He explained that this opinion was based on the diagnosis criteria for both disorders (DSM-5 criteria),[1] and he explained in detail how Claimant met each individual criterion. *Id.* at 25-31; R.R. 161a-66a. Dr. Tereo opined that Claimant continues to need the type of treatment he has been providing. *Id.* at 31; R.R. 167a.

Dr. Tereo disagreed with Dr. Altman's opinion that Claimant has fully recovered from PTSD and MDD. On cross-examination, he admitted that he has never communicated with Claimant's primary care physician, OBGYN, neurologist, or reviewed prior mental health treatment records. *Id.* at 39; R.R. 175a. Dr. Tereo acknowledged that it would be distressing for Claimant to lose two pregnancies and explained that he was aware that she suffered from various physical ailments, including a stroke and hip issues. *Id.* at 42-44; R.R. 178a-80a.

*WCJ's Decision*

On May 10, 2023, the WCJ issued a decision denying Employer's termination petition. In so doing, the WCJ made, *inter alia*, the following findings of fact and credibility determinations:

> 6. Having had the opportunity to hear [C]laimant's testimony, observe her demeanor and comportment and having read her deposition testimony, this Judge finds [C]laimant's testimony to be one of a credible witness based on [C]laimant's overall demeanor and comportment. Claimant's testimony concerning the occurrence of the work injury is consistent with the

---

[1] Dr. Tereo explained that the DSM-5 is a book containing every potential mental health diagnosis and the symptoms that would be necessary to qualify for that particular diagnosis. Tereo Dep. at 24; R.R. 160a.

6

documentation contained in mental health records. Claimant's testimony concerning her ongoing symptoms is supported by the credible testimony of Dr. Tereo.

7. Having had the opportunity to review the testimony of the mental health providers, this Judge accepts the testimony of Dr. Tereo as credible, convincing, and worthy of belief. In reaching this determination, this Judge has considered the following:

> a. as [C]laimant's treating mental health provider, Dr. Tereo has had the benefit of multiple sessions with [C]laimant.

> b. Dr. Tereo provided a thorough explanation to support his diagnosis of [PTSD] by detailing his reasoning [C]laimant's symptoms continue to meet the DSM-5 criteria for [PTSD and MDD].

> c. Dr. Tereo explained his reasoning that Claimant's ongoing symptoms are directly attributable to her May 20, 2018 work injury.

> d. Dr. Tereo's testimony is consistent with the credible testimony of Claimant.

8. Having had the opportunity to review the mental health testimony, this Judge rejects as not credible, persuasive, or worthy of belief the testimony of Dr. Altman, whenever Dr. Altman's testimony contradicts the opinion of Dr. Tereo. In reaching this determination, this Judge has considered the following:

> a. Dr. Altman based her opinion of full recovery on a one-time evaluation of claimant.

> b. Dr. Altman's opinions are completely undermined by Claimant's credible testimony concerning her ongoing symptoms.

> c. Dr. Altman's opinions are not psychiatrically well reasoned or logical.

7

> 9. Based on my review of the evidentiary record when considered in its entirety, this Judge finds claimant has not fully recovered from her work related [PTSD and MDD], is unable to return to her pre-injury occupation without restriction or limitation and requires further mental health treatment for her work-related injuries.

WCJ's Decision, F.F. Nos. 6-9; R.R. 31a. The WCJ noted that Employer objected to Dr. Tereo's medical testimony based on his qualifications and overruled the objection. *Id.*, F.F. No. 5; R.R. 31a. Employer appealed the WCJ's decision to the Board.

*Board's Decision*

Before the Board, Employer argued that the WCJ erred in overruling its objection to Dr. Tereo's testimony because Dr. Tereo is not licensed to practice any type of medicine in the Commonwealth and does not fall within the definition of "health care provider" under Section 109 of the Workers' Compensation Act (Act),[2] 77 P.S. § 29. It argued that only health care providers may competently testify as expert witnesses in workers' compensation proceedings. The Board rejected Employer's argument, concluding that whether Dr. Tereo qualifies as a "health care provider" under the Act is not dispositive of whether he could testify as an expert witness. The Board concluded that Dr. Tereo's expert testimony was competent and the WCJ credited it over the testimony of Employer's expert, Dr.

---

[2] Act of June 2, 1915 P.L. 736, as amended, added by the Act of July 2, 1993, P.L. 190, 77 P.S. § 29.

Altman. Thus, the WCJ did not err in concluding that Employer failed to carry its burden on the termination petition.[3] Employer now petitions this Court for review.[4]

**Issues**

Employer raises two issues for this Court's consideration. First, it argues that the WCJ erred in relying on the medical testimony of Dr. Tereo, an unlicensed provider, to deny the termination petition. Second, Employer argues the WCJ arbitrarily and capriciously disregarded competent evidence of record by relying on Dr. Tereo's testimony, disregarding whole portions of Claimant's testimony, and mischaracterizing Dr. Altman's testimony. We discuss each issue in turn.

### I. Dr. Tereo's Testimony

*Employer's Argument*

Employer argues that Dr. Tereo's opinions do not constitute competent evidence to support ongoing payment to Claimant as his opinions do not amount to that of an expert medical witness. It argues that Dr. Tereo is not a health care provider under Section 109 of the Act, and therefore cannot provide competent expert testimony. 77 P.S. § 29. Pursuant to the Act,

---

[3] The Chairman of the Board, Alfonso Frioni, Jr., dissented. He stated:

> Dr. Tereo is neither "licensed" or "otherwise authorized" by the Commonwealth, or the state of South Carolina where the Claimant resides, to provide health care. One does not get to the second phrase [of Section 109 of the Act]. Dr. Tereo is not a medical professional [within] the statute.

Board's Decision at 17; R.R. 96a.

[4] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007).

9

"Health care provider" means any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

77 P.S. § 29. Employer submits that Dr. Tereo is neither licensed nor otherwise authorized by the Commonwealth to provide health care services. While Dr. Tereo holds himself out as a board-certified psychoanalyst (and the WCJ found as such), he conceded in his deposition that he is not a medical doctor, not a psychologist, and not otherwise licensed in Pennsylvania as any type of mental health provider. Because Dr. Tereo holds no license to practice, and "psychoanalyst" is not included in Section 109's list of health care providers, his testimony and treatment records cannot constitute competent medical evidence to defeat Employer's termination petition.

Employer notes that Section 109 of the Act specifically includes "psychologist" in its definition of health care provider and highlights the difference between the professions. It explains that psychology has been defined as a "mental health professional who uses psychological evaluations and talk therapy to help people learn to better cope with life and relationship issues and mental health conditions." Employer's Br. at 41 (citing Cleveland Clinic, Psychologist: Psychologist: What They Do, Specialties & Training (clevelandclinic.org)). In contrast, a psychoanalyst helps individuals "tap into their unconscious mind to recover repressed emotions and deep-seated, sometimes forgotten experiences. By gaining a better understanding of their subconscious mind, patients acquire insight

10

into the internal motivators that drive their thoughts and behaviors." *Id.* (citing Careers In Psychology.org, Type of Therapy – Psychoanalysis).

Moreover, to practice psychology in the Commonwealth, an individual must be licensed and meet the following requirements: completion of a doctoral program accredited by the American Phycological Association or the Canadian Psychological Association; obtain a passing score on the Examination for Professional Practice in Psychology and the Pennsylvania Psychology Law Examination; have two years of supervised experience; and complete during the proceeding biennium a minimum of 30 contact hours of continuing education in acceptable courses, programs, or activities. *Id.* at 42 (citing Pennsylvania Department of State, Professional Licensing, Boards & Commissions, Psychology, Psychologist Licensure Requirements Snapshot).

Employer argues that requiring expert witnesses to be licensed providers serves an important public policy function and directs the Court's attention to the Medical Care Availability and Reduction of Error (MCARE) Act[5] in support. Employer highlights Section 512(b)(1) of the MCARE Act, which provides:

> (b) Medical testimony.--An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:
>
> (1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

40 P.S. § 1303.512(b)(1). Employer argues the same licensure standard should apply to workers' compensation proceedings through Section 109's requirements in order to avoid "voodoo medicine or quackery." Employer's Br. at 43. Employer explains

---

[5] Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101-1303.910.

11

that in the workers' compensation context, expert medical testimony serves to educate the WCJ in order to reach a more appropriate conclusion regarding the medical facts of the case. Requiring an expert to hold a license to provide health care services ensures ongoing competence and high standards of practice. For these reasons, Employer argues the WCJ erred in overruling its objection to Dr. Tereo's testimony and further erred in relying on the same to deny Employer's termination petition.

*Claimant's Argument*

Claimant responds that Employer improperly focuses on the definition of "health care provider" under Section 109 of the Act, which defines those who can provide workers' compensation medical benefits to claimants injured in Pennsylvania but makes no mention of who may testify as an expert witness. Claimant submits that the Pennsylvania Supreme Court addressed who is competent to provide expert testimony in *Freed v. Geisinger Medical Center*, 5 A.3d 212, 216-17 (Pa. 2010), stating:

> in the context of legal proceedings, if a witness has any reasonable pretension to specialized knowledge on the relevant subject, he may be offered as an expert witness, and the weight to be given his testimony is for the trier of fact to determine. Rule 702 of the Pennsylvania Rules of Evidence also provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify." Pa.R.E. 702.

As explained in *Freed*, an expert witness's qualifications go to the weight of the evidence, which in workers' compensation proceedings, is within the direct purview of the WCJ. *See Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997). Here, cognizant of Dr. Tereo's

qualifications, the WCJ credited his testimony over that of Employer's expert, Dr. Altman.

Additionally, Claimant argues that this Court has held that non-medical providers may provide expert testimony, especially in cases dealing with psychological injuries. Claimant's Br. at 19 (citing *CPV Mfg., Inc. v. Workers' Comp. Appeal Bd. (McGovern)*, 805 A.2d 653 (Pa. Cmwlth. 2022); *Serrano v. Workmen's Comp. Appeal Bd. (Chain Bike Corp.)*, 553 A.2d 1025 (Pa. Cmwlth. 1989)). Claimant submits that the WCJ did not err in accepting Dr. Tereo's testimony, and Employer's challenge is merely an attempt to attack the WCJ's credibility determinations and the weight afforded to Dr. Tereo's testimony.

*Discussion*

Employer's reliance on the term "health care provider" in Section 109 of the Act to qualify (or disqualify) individuals from submitting expert testimony is misplaced. We note, initially, that the term "health care provider" is used somewhat sparingly throughout the Act, but an overview of some such uses is illustrative. As noted by the Board, the term health care provider is referenced in Section 422 of the Act, 77 P.S. § 835,[6] which deals, *inter alia*, with what is commonly referred to as "52 weeks" cases. The second paragraph of Section 422 provides:

> Where any claim for compensation at issue before a workers' compensation judge involves fifty-two weeks or less of disability, either the employe or the employer may submit a certificate by any *health care provider* as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and

---

[6] Added by the Act of June 26, 1919, P.L. 642.

13

> surgical or other matters therein stated and findings of fact
> may be based upon such certificates or such reports. . . .

77 P.S. § 835 (emphasis added). This provision explains that a certificate by a health care provider may serve as medical evidence where 52 weeks of disability or less is at issue. However, as noted by the Board, Section 422's discussion of what constitutes appropriate documentary medical evidence in 52 weeks cases does not contemplate that those health care providers will submit expert testimony or otherwise limit what may qualify as expert testimony in workers' compensation proceedings.

Perhaps more elucidating is the use of the term health care provider in Section 314 of the Act, 77 P.S. § 651, which permits an employer to request a claimant to undergo a physical examination. Section 314(a) provides, *inter alia*,

> (a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider *or other expert*, who shall be selected and paid for by the employer.

77 P.S. § 651(a) (emphasis added). Throughout Section 314, the term "health care provider" is always paired with the term "other expert," indicating that an individual can be considered an expert even if he or she falls outside of the Act's definition of health care provider. *Id.* (emphasis added). Based on the use of the term health care provider in the Act, we are not persuaded by Employer's argument that such definition dictates who may testify as an expert in workers' compensation proceedings.

The Court finds Employer's remaining arguments equally unpersuasive. While Employer directs the Court's attention to the MCARE Act's

14

provision that statutorily sets forth qualifications for medical testimony, 40 P.S. § 1303.512(b)(1), this reference highlights the fact that the Act contains no similar statutory provision. Instead, the standard for qualification of an expert witness in workers' compensation proceedings has been established through precedent.

As recognized by Claimant, the Pennsylvania Supreme Court in *Freed* explained that "if a witness has any reasonable pretension to specialized knowledge on the relevant subject, he may be offered as an expert witness, and the weight to be given his testimony is for the trier of fact to determine." *Freed*, 5 A.3d at 216-17. In the context of workers' compensation proceedings, the WCJ is the trier of fact, and caselaw shows the *Freed* principle has been applied to these administrative proceedings. *See, e.g., Olympus and Sompo America Ins. Co. v. Eiselen (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 38 C.D. 2022, filed October 23, 2023) (holding a qualified nurse was not prohibited from giving expert testimony regarding medical causation); *County of Washington v. Workers' Comp. Appeal Bd. (Haney)* (Pa. Cmwlth., No. 1154 C.D. 2014, filed Mar. 10, 2015), slip op. at 5 (citing *Freed* and noting that "the standard for qualification of an expert witness is a liberal one").[7]

Turning to the facts of the instant case, the WCJ found the following in relation to Dr. Tereo's qualifications:

> Dr. Tereo is a board-certified psychoanalyst. He has a bachelor's degree in Psychology, some master's degree training, and a Ph.D. in Psychoanalytical Psychology. Dr. Tereo is certified by the National Association for the Advancement of Psychoanalysis in New York; this is not a medical board or psychology board associated with Pennsylvania. Dr. Tereo explained that a psychoanalyst is trained to understand growth and development and

---

[7] Unreported decisions of this Court may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

15

intervene when a person "goes off course." He routinely treats patients with PTSD and major depressive disorder. He treats patients as young as 18 months and as old as 92 years old.

WCJ's Decision, F.F. No. 4a; R.R. 28a. The WCJ also found that there is no licensure for psychoanalysis in Pennsylvania, but Dr. Tereo is permitted to practice and qualifies for insurance reimbursement. *Id.*, F.F. No. 4b; R.R. 28a. With knowledge of these qualifications, the WCJ overruled Employer's objection to Dr. Tereo's qualifications to testify as an expert, and we discern no error in this ruling under *Freed*. Dr. Tereo's education and practice background establishes that he has specialized knowledge on the subject of PTSD and MDD and routinely treats patients suffering from these conditions. Accordingly, we reject Employer's contention that the WCJ erred in relying on Dr. Tereo's testimony in denying the termination petition.[8]

## II. Remaining Evidentiary Challenge

Employer next argues the WCJ arbitrarily and capriciously disregarded competent evidence of record by relying on Dr. Tereo's testimony, disregarding whole portions of Claimant's testimony, and mischaracterizing Dr. Altman's testimony.

Much of Employer's argument in relation to Dr. Tereo's testimony has been addressed above. However, Employer also argues that Dr. Tereo's opinions

---

[8] We note that Dr. Tereo has provided expert testimony in other workers' compensation proceedings reviewed by this Court. *See Sch. Dist. of Phila. v. Smith (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1113 C.D. 2022, filed Aug. 22, 2023). In *Smith*, Dr. Tereo submitted deposition testimony in support of claimant's claim petition. His qualifications as an expert were not challenged; however, the WCJ ultimately "gave greater deference and weight to the opinions of [employer's expert], as a licensed psychiatrist." *Smith*, slip op. at 7-8. While factually distinguishable, the *Smith* case confirms the application of the *Freed* principle in workers' compensation proceedings, *i.e.*, that an expert's qualifications (or lack thereof) go to the weight of the evidence determined by the WCJ.

16

are incompetent because he had no knowledge of Claimant's mental health condition before he examined her for the first time on April 12, 2022, and he did not review a complete set of her medical records. Citing *Southwest Airlines v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280 (Pa. Cmwlth. 2009), and *Long v. Workers' Compensation Appeal Board (Integrated Health Services, Inc.)*, 852 A.2d 424 (Pa. Cmwlth. 2004), Employer argues that a medical opinion is incompetent where the medical professional does not have knowledge of the claimant's condition prior to the work injury.

In *Southwest Airlines*, a claimant filed a claim petition alleging that in 2005, she was hit in the face and head by a metal door while working for Southwest Airlines. In support of her claim petition, the claimant offered the medical testimony of Dr. Grossinger, who opined that the claimant was suffering from post-concussive syndrome. The WCJ granted the claimant's claim petition, and the Board affirmed. On appeal, this Court reversed, holding, *inter alia*, that Dr. Grossinger's testimony was not competent to establish a causative link between the work injury and claimant's disability. In so holding, this Court explained that Dr. Grossinger diagnosed the claimant with post-concussive syndrome related to her work injury without any personal knowledge of the claimant's physical condition prior to his examination, and without reviewing any of the claimant's medical records, which showed two prior head injuries and complaints of similar symptoms dating back to 1992.

Similarly, in *Long*, this Court reiterated that "[a]n opinion that is rendered where the medical professional does not have a complete grasp of the medical situation and/or the work incident can render the proffered opinion incompetent." 852 A.2d at 428.

17

Upon review, we reject Employer's assertion that Dr. Tereo's testimony was incompetent. Our comprehensive review of Dr. Tereo's testimony in the context of the entire record shows that he had a firm grasp of Claimant's work injury and was aware of the other various stressors in her life including her stroke, recent miscarriage, and stillborn birth, thus distinguishing the instant case from both *Southwest Airlines* and *Long*. As succinctly stated by the Board, "[Dr. Tereo] just had a different opinion as to whether Claimant was fully recovered from her work-related psychological injuries." Board's Decision at 14; R.R. 93a. Employer's arguments amount to nothing more than a thinly veiled attempt to ask the Court to reweigh the evidence and alter the WCJ's credibility determinations, which we decline to do. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016) (the WCJ is "the ultimate finder of fact[] and the exclusive arbiter of credibility and evidentiary weight").

We also note that *Southwest Airlines* and *Long* are claim petition cases, where the Claimant carries the burden of proving all elements necessary to support an award. This differs from the standard in a termination petition, where "an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (internal citations omitted). An employer may satisfy its burden by presenting "unequivocal and competent medical evidence of the claimant's full recovery from her work related injuries." *Id.* A claimant has no burden on a termination petition, and the benefits will remain in place until the employer proves that a termination of such benefits is warranted. *Lee v. Workers' Comp. Appeal Bd. (Keystone Ins. Co.)*, 733 A.2d 659, 661 (Pa. Cmwlth. 1999).

18

Employer's remaining argument alleges the WCJ ignored portions of Claimant's testimony, mischaracterized Dr. Altman's testimony, and failed to consider the treatment notes attached to Dr. Tereo's deposition. Employer recounts the portions of Claimant's testimony where she discusses the various stressors she has faced since the rape, and highlights Dr. Altman's medical opinion that Claimant's current mental health diagnoses are a result of those stressors. As to Dr. Tereo's treatment notes, Employer argues they reflect that Claimant's talk therapy sessions with Dr. Tereo centered around her recent physical ailments and stressors related thereto, not the rape. According to Employer, these treatment notes are the best evidence of the cause of Claimant's current mental status and considered in conjunction with Claimant's own testimony and the expert opinion of Dr. Altman, it is clear that Claimant has recovered from her work injury.

We disagree. Our review of the WCJ's decision shows that she thoroughly summarized Claimant's testimony, Dr. Tereo's testimony, and Dr. Altman's testimony, and adequately explained her credibility determinations related to each. Moreover, our independent review of Dr. Tereo's treatment notes show references to the rape and symptoms Claimant struggles with as a result. *See, e.g.,* Confidential Records at 2, 6.[9] While couched differently, Employer merely disagrees with the WCJ's credibility determinations, and the weight afforded to the evidence of record.

---

[9] The Confidential Records citation reflects electronic pagination. While we mention Dr. Tereo's treatment notes, we disagree with Employer's statement that these are necessarily the best evidence of Claimant's current mental status. The treatment notes provide a brief, few sentence summary of Claimant's talk therapy sessions, but are certainly not comprehensive as to what was discussed the entirety of the session. In this case, Dr. Tereo's credited testimony, as supported by the treatment notes, evidences Claimant's mental health condition.

19

It is well settled that a WCJ's credibility determinations are entitled to substantial deference, and such determinations may only be overturned if they are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). The WCJ's findings suffer from none of these defects. Indeed, the WCJ acknowledged that Claimant has faced other struggles since the rape while working for Employer, but credited Claimant and Dr. Tereo's testimonies that she has not fully recovered from the PTSD and MDD stemming from her 2018 work injury. While Dr. Altman would attach Claimant's current mental health diagnoses to these other struggles, the WCJ found Dr. Altman not credible and succinctly stated the reasons why. These credibility determinations were adequately explained and will not be disturbed by this Court on appeal. *Rissi v. Workers' Comp. Appeal Bd. (Tony DePaul & Son)*, 808 A.2d 274, 279 (Pa. Cmwlth. 2002). Accordingly, we conclude that Employer's second issue lacks merit.

## Conclusion

For the reasons set forth above, we affirm the order of the Board.

_____
MATTHEW S. WOLF, Judge


Judges Fizzano Cannon and Dumas did not participate in this decision.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections - SCI :
Chester, :
               Petitioner :
                :
          v. : No. 307 C.D. 2024
                :
Crystal Faison (Workers' Compensation :
Appeal Board), :
            Respondent :

# **O R D E R**

AND NOW, this 9th day of January 2025, the February 26, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MATTHEW S. WOLF, Judge